(161 App. Div. 127)

## HILLS v. FLYNN et al.

(Supreme Court, Appellate Division, First Department.   March 6, 1914.)

1. PLEDGES (§ 25*)—RIGHTS OF PLEDGEE—PROSECUTION OF DEBT TO JUDGMENT.
   A pledgee does not destroy the pledge or affect his rights under it by prosecuting his debt to judgment.

   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 51–57, 60; Dec. Dig. § 25.*]

2. WILLS (§ 634*)—CONSTRUCTION—VESTED INTERESTS—ASSIGNMENT.
   Testator devised certain real property to his executors in trust to apply the income to the use of his daughter for life, after her death the trust to cease, and the property to pass with its appurtenances to her children, if any, then living or to the issue of any child then dead.   Testator then made his two sons, G. and F., his residuary legatees, and devised the residue to them and their heirs.   G. died, leaving him surviving four children as his only heirs.   Thereafter one of the children died intestate, unmarried, and without issue, at which time one of the other children assigned his interest under the will to his grandfather's estate to pay an indebtedness.   Held, that such child, at the time of the assignment, was possessed of a vested assignable remainder in one-sixth of the trust estate, subject to the contingency that the life tenant should die leaving issue, and, she having died without issue, the interest passed under the assignment.

   [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1488–1510; Dec. Dig. § 634.*]

3. REMAINDERS (§ 17*)—OPERATION OF LIMITATIONS—TIME—TERMINATION OF LIFE ESTATE.
   · Where one of the heirs of a remainderman had a vested assignable interest in one-sixth of certain trust property, subject to the termination of a preceding life estate, limitations did not begin to run against the right of a pledgee of such interest to enforce the same until the termination of the life estate.

   [Ed. Note.—For other cases, see Remainders, Cent. Dig. §§ 12–17; Dec. Dig. § 17.*]

Submission of controversy on agreed statement of facts by William E. Hills as administrator of the estate of George Eliot Sill, deceased, against Henry S. J. Flynn as receiver in supplementary proceedings, and the United States Trust Company of New York as trustee.   Judgment for plaintiff.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and HOTCHKISS, JJ.

Katz & Sommerich, of New York City (William E. Hills, of New York City, of counsel, and Otto C. Sommerich, of New York City, on the brief), for plaintiff.

Miller & Bretzfelder, of New York City (Bertram. Bodenheimer, of New York City, of counsel), for defendants.

CLARKE, J.   On August 23, 1894, George E. Sill of Hartford, Conn., loaned $3,385.45 to Hubert K. Wood, and received from him · the following instrument:

"Hartford, Conn., Aug. 23, 1894.

"On demand after date I promise to pay to George Eliot Sill or order the sum of three thousand three hundred and eighty five 45/100 dollars, with interest at the rate of six per centum per annum from date.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"To secure the payment of the above amount and any accumulated interest I hereby assign and set over to the said George Eliot Sill all my right, title and interest in and to a certain trust created by the will of my late grandfather George Wood of New York City; which trust is now held by Frederick Wood of Morristown, N. J., as trustee for the benefit of Julia Wood of Morristown, N. J., and my proportion of which trust is payable to me or my order at the death of the said Julia Wood. Provided that any balance remaining after the payment of the above amount and any accumulated interest shall be paid over to me.                                    Hubert K. Wood."

The will of George Wood admitted to probate by the Surrogate's Court of New York County, November 10, 1862, created a trust of certain real property for the benefit of Julia Wood for life. The United States Trust Company was appointed substituted trustee of said trust by a decree of the Surrogate's Court January 23, 1896. Said trust on Sepember 3, 1909, was represented by a fund upwards of $30,000, held by said company as substituted trustee for the benefit of Julia Wood and remaindermen, and the said Hubert K. Wood is one of said remaindermen. Julia Wood died April 5, 1913, and the said trust became then distributable. The share of H. K. Wood in said fund amounted to $5,153.51. Prior to June 7, 1901, George Eliot Sill died intestate. George G. Sill was duly appointed administrator, and on said date as administrator recovered a judgment in the superior court of Hartford County, Conn., against Hubert K. Wood upon the aforesaid note, which judgment was duly docketed, and was for the amount of $5,605.73, damages and $26.45 costs. Thereafter George G. Sill died, and Harry M. Burke of Hartford was duly appointed administrator de bonis non of the estate of George Eliot Sill. Upon the death of George G. Sill, the sole beneficiaries of the estate of George Eliot Sill were and still are William R. Sill and Helen Sill Wood, a sister, who are now the sole surviving next of kin of the said George Eliot Sill and George G. Sill.

On September 3, 1909, said Hubert K. Wood executed and delivered an instrument to Charles B. Barkley by which he granted, bargained, and conveyed all his right, title, and interest in and to the said trust fund to the full extent of $4,000, together with interest at the rate of 6 per cent. thereon from the date of the death of said Julia Wood, and appointed the party of the second part his true and lawful attorney for his own benefit to make demand, sue for, and collect said amount. In said instrument he expressly subordinated his assignment to the estate of George E. Sill to this assignment to Barkley. Prior to the said transfer to Barkley the said Burke as administrator, with the consent of the heirs at law and next of kin of said George Eliot Sill, released, to the extent of $4,000, and interest, the said assignment made by Hubert K. Wood to George Eliot Sill, and so informed the United States Trust Company.

On February 14, 1913, the Nestor Manufacturing Company a New York corporation, duly recovered judgment against Hubert K. Wood in the Municipal Court, borough of Manhattan, and a transcript was duly docketed in the office of the county clerk, for $431.63. Thereafter an execution was duly issued, and returned wholly unsatisfied. On April 9, 1913, an order in supplementary proceedings was made

thereon. Wood appeared and was examined. On May 14, 1913, an order was made and duly served upon the Trust Company to appear as a third party for examination in supplementary proceedings upon said judgment, and in said order there was a provision enjoining the Trust Company from disposing of any property belonging to said Wood then in its possession.

On October 16, 1913, the defendant Flynn was duly appointed receiver in supplementary proceedings, and the order was duly filed and Flynn duly qualified. On October 8, 1913, the plaintiff, Hills, was duly appointed administrator in the place of Burke in the probate court of Hartford.

The injunction contained in the order of May 14th was modified by a stipulation executed by Nestor Manufacturing Company, Wood, Flynn as receiver and the Trust Company and an indenture executed by said parties and Hills, Barkley, and William R. Sill and Helen Sill Wood. Pursuant to said instruments the Trust Company holds the sum of $550, of the share of Wood in said trust fund, subject to the adjustment of the claims thereto of his creditors, Nestor Manufacturing Company and the estate of George Eliot Sill, deceased, his assignee. Pursuant to said instruments the Trust Company has paid out the balance of Wood's share, $4,603.51, to Barkley and Hills as administrator. No action was ever brought in the New York courts upon the said judgment record in the state of Connecticut, and the said assignment from Wood to Sill was never filed in the office of the clerk of the county of New York. Notice of the assignment from Wood to Sill was given to the Trust Company prior to the assignment to Barkley. The said Wood was a resident of Connecticut until the first half of the month of September, 1907, and since has been and is now a resident of New York. No part of the said judgment and note has been paid. Said assignment from Wood to Sill was in good faith, for valuable consideration. In Connecticut there is no limitation, by statute or otherwise, setting the time during which an action upon a judgment recovered in that state, or any other state, shall be brought.

This agreed statement of facts is without prejudice to the running of the statute of limitations, if the same has run against the said assignment from Wood to Sill, or the indebtedness secured thereby.

Plaintiff demands judgment, decreeing that the defendant United States Trust Company pay to him, as administrator de bonis non of George Eliot Sill, deceased, the said sum of $550 on account of said assignment. Defendant Flynn prays for judgment decreeing that the company pay said sum to him as receiver in supplementary proceedings upon the judgment recovered by the Nestor Manufacturing Company against Wood. The defendant Trust Company prays for judgment decreeing to whom it shall pay out the said sum.

The plaintiff claims that the note and assignment, as security, constitute a pledge, that it is a chose in action, and that the pledgee may retain or sell the pledge, though the debt to secure which the pledge was given is outlawed.

[1] The question involved is what interpretation shall be given to the instrument, Exhibit A. It was an unsealed promissory note dated

August 23, 1894, containing an assignment of so much of Wood's vested remainder in a trust estate limited on the life of Julia Wood, the cestui que trust, as would pay the amount thereof. As against the note itself the statute of limitations has run, but judgment was obtained on the note in Connecticut before the running of the statute. The entry of judgment does not affect the assignment.

"A party who holds property under a pledge to secure a debt of the pledgor does not destroy the pledge or affect his rights under it by prosecuting his debt to judgment. The pledge still remains the security for the judgment debt, or so much of it as it was originally made to secure." Sickles v. Richardson, 23 Hun, 566. See, also, Fisher v. Fisher, 98 Mass. 303; King v. Hutchins, 28 N. H. 561.

[2] As appears by Exhibit C, the grandfather of Hubert K. Wood by his will devised to his executors in trust certain real estate to apply to the use of his daughter, Julia Wood, for and during her life, and after her death the trust is to cease, and upon her death the testator gave the said trust estate with appurtenances to her children, if any, then living or to the issue of any child then deceased. The said will further made his two sons George and Frederick his residuary legatees, and gave to them all the rest and residue of his real and personal estate in equal shares to hold to them and to their heirs. George Kip Wood, the father of Hubert Kip Wood, one of the residuary legatees and devisees under said will, died on or about the year 1873, leaving him surviving George E. Wood, Louise M. Wood, Allen G. Wood, and Hubert K. Wood, his children and only heirs at law. Thereafter Allen G. Wood died intestate, unmarried, and without issue. Therefore, at the time of the execution of the assignment in question, Hubert K. Wood as one of the three surviving heirs of his father, was possessed of a remainder in one-sixth of the trust estate left by his grandfather to his aunt, Julia Wood, subject to be divested upon her having issue. She was then 72 years of age and unmarried. She died April 5, 1913, unmarried and without issue, and, as Hubert K. Wood survived her, he became absolutely vested as remainderman in one-sixth of said trust estate.

In National Park Bank v. Billings, 144 App. Div. 536, 129 N. Y. Supp. 846, affirmed on the opinion below, 203 N. Y. 556, 96 N. E. 1122, Mr. Justice Miller said:

"The will of Chester Billings, deceased, does contain a gift to appellant, not in express words, but in a direction to trustee to divide and pay; wherefore futurity is annexed to the substance of the gift, the same as though there were express words of gift, with futurity annexed to the substance thereof by express words. * * * The appellant then acquired, upon the death of his father, not a bare possibility merely, but the right to the possession and enjoyment of one-half of his father's estate in the event that he should attain the age of 25 years and survive his mother, and that right was not subject to the will of a third party. The question is whether such a right or interest is property within the meaning of section 1871 of the Code of Civil Procedure. * * * It has been assumed by this court in this and the Second Department that a future contingent interest in personal property is alienable, the same as a contingent remainder in real property. See Stringer v. Barker, 110 App. Div. 37 [96 N. Y. Supp. 1052]; Cohalan v. Parker, 138 App. Div. 849 [123 N. Y. Supp. 343]. * * * If the said interest was a contingent remainder in real property, there can be no doubt that it would be alienable. Real Prop. Law (Consol. Laws, c. 50; Laws 1909, c. 52) §§ 36–40, 59. * * *

"For what reason or upon what principle can it be said, then, that a future contingent interest in personal property is not assignable at law as well as in equity? Not because such right or interest does not exist, because we have seen that it is a present right, which cannot be defeated by the act of a third party, and which will ripen into an estate in enjoyment upon the happening of a contingency. * * * In this case there is no uncertainty of the person; the appellant is named as the donee; he will take only upon the contingency of his surviving his mother, but his being then in existence is no part of the description of him, as donee. His survivorship being one of the contingencies, his contingent interest is of course not transmissible to his personal representatives; whereas, if the contingency were some other event, it would be transmissible. Kenyon v. See, 94 N. Y. 563. But that fact does not militate against its assignability, as shown by Woodruff, J., in Moore v. Littel, 41 N. Y. at page 86. Surely an interest which is transmissible to personal representatives is a property interest, and should be held to be assignable as well in law as in equity. A contingent interest is always subject to be defeated, else it would not be contingent; the nature of the interest, as a species of property, is not affected by the contingency upon which it will vest in possession; there being no uncertainty as to the person. If the survivorship of the donee be the contingency, it will not be transmissible to his personal representatives, but it may still be assignable, the assignee of course taking subject to the chance that it may never vest in possession."

It is clear therefore that the interest of Wood in the trust estate created by his grandfather's will was alienable by him. It is also clear that he assigned so much thereof as was needed to pay the debt evidenced by the note, and that due notice of the assignment was given to the trustee long before the trust terminated. While alienable, the portion of the remainder assigned could not be presently reduced to possession, but, after the notice, the trustee held such portion of the remainder as trustee for the assignee, and, upon the falling in of the life estate, it was the trustee's duty to pay it to its owner, said assignee. At the time the judgment was obtained by the Nestor Manufacturing Company, execution issued, and a receiver appointed, the portion of the share of the remainder as theretofore assigned to Sill had ceased to be the property of Wood, and was owned by Sill's estate. Although being property and so owned, said estate was not, and did not need to be, in the actual possession thereof. It was in possession of the assignment, which was enough. It was not the property of Wood, and therefore his receiver did not and could not acquire any right, title, or interest therein in hostility to the assignee.

In House v. Carr, 185 N. Y. 453, 78 N. E. 171, 6 L. R. A. (N. S.) 510, 113 Am. St. Rep. 936, 7 Ann. Cas. 185, Chief Justice Cullen said:

"A pledgee may retain or sell the pledge, though the debt to secure which the pledge was given is outlawed. Jones v. Merchants' Bank of Albany, 6 Rob. 162; Jones on Pledges, § 582. This is not on the theory that by lapse of time title has vested in the pledgee, for the law is otherwise (Jones on Pledges, § 581), but because the statute bars merely the remedy by action."

[3] I cannot see how any statute of limitations can be held to have run against this claim. The assignee had done all that he was called upon to do by filing notice with the trustee. It was impossible for any one to collect during the lifetime of the cestui que trust. If we should look at the assignment as a pledge, no duty devolved upon the

assignee to sell his claim. He had a right to hold it until it was collectible.

In Hulbert v. Clark, 128 N. Y. 295, 28 N. E. 638, 14 L. R. A. 59, Judge Earl said:

"It is a general rule, recognized in this country and in England, that when the security for a debt is a lien on property, personal or real, the lien is not impaired because the remedy at law for the recovery of the debt is barred."

The plaintiff, as the administrator of the assignee, Sill, is entitled to judgment decreeing that the United States Trust Company shall pay to him the sum of $550, without costs to any party. All concur.