THOMAS C. WEST, WILLIAM C. NIXON and WILLIAM S. BIDDLE, as Receivers of the ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Plaintiffs, *v.* GUARANTY TRUST COMPANY OF NEW YORK, SOUTHERN RAILWAY COMPANY and BANKERS TRUST COMPANY, Defendants.

(Supreme Court, New York Special Term, January, 1914.)

Equity — voting trust agreement — provision for penalty or forfeiture — injunction pendente lite.

A voting trust agreement under which each of two railway companies delivered to a trust company its one-half of the stock of a new corporation, a terminal company, which they had formed, to secure their mutual protection in the premises and also the fulfillment of the purposes and intent of a joint

39

lease made by them with the new corporation, provided that in the event of a default by either of the railway companies in the payment of the one-half of the guaranteed interest rental, and the continuance of such default for three months after notice by the trustee, " then *as a penalty therefor* any such default of either of the railway companies shall operate as a *forfeiture* of the shares of the capital stock of the Terminal Company originally deposited with the trustee by such defaulting railway company and shall vest the same in the other one of the railway companies, its successors or assigns, not in default, and thereupon the trustee shall and will execute all proper instruments declaring such forfeiture, which shall be conclusive evidence of the facts therein set forth, and shall and will also assign unto that one of the railway companies not in default, or upon its order, all of the shares of the capital stock of the Terminal Company then held by the trustee, and shall and will deliver the certificates of said stock accordingly." In an action by receivers of one of the railway companies against the other railway company and the trust company to enjoin them from making or accepting any delivery of certificates for shares of stock of the terminal company deposited by plaintiffs' company with the trust company under the voting trust agreement, or from declaring any forfeiture in respect thereof, or from executing any assignment or conveyance thereof, held, that the voting trust agreement, while not an instrument to secure payment of a debt which existed at the time it was made, was, nevertheless, an instrument to secure the performance of obligations the breach of which would necessarily create a debt, and that such a debt was within the contemplation of the parties at the time the agreement was made.

That the provision therein for forfeiture might be declared void and unenforcible upon a trial where all the facts and circumstances warranted a conclusion which would prevail over the dry words of the agreement.

That the term " default " as used in the instrument was equivalent to, and identical in significance with, the term " debt," since the default related to the payment of interest on a debt for which both parties were jointly and severally liable.

The rule, that agreements for forfeiture of collateral are void where one side alone has parted with value and takes collateral to secure its repayment, does not extend to the case of a mutual agreement wherein both parties undertake per-

formance on equal terms and conditions and mutually agree that in the event of default by one party the other shall acquire all rights and title under the agreement.

While a voting trust agreement may suspend control, it has never yet gone so far as to forfeit title with the sanction of a court of equity.

A preliminary injunction to preserve the *status quo* may properly issue where the case requires a more careful consideration than can be given on the hearing of a motion, or where there is no denial of the act charged as contemplated and the injury threatened will not be easily remedied if the injunction is refused, or where the questions of law or fact to be ultimately determined are grave and difficult, and the injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small if it is granted.

As to the damages suffered by plaintiffs' company through the other railway company's default, there are legal remedies the enforcement of which would secure the plaintiffs' company such relief as it may be entitled to.

The action not being for the redemption of the stock, plaintiffs' failure to make any tender or any reference thereto in their complaint was of no importance.

Plaintiffs' motion for an injunction *pendente lite* granted on condition that they give a sufficient undertaking in an amount to be determined on the settlement of the order on notice.

MOTION for an injunction *pendente lite.*

Sullivan & Cromwell, for plaintiffs.

Stetson, Jennings & Russell, for defendants.

GAVEGAN, J.   The motion is for an injunction *pendente lite.*   The action is brought by the plaintiffs as receivers of the St. Louis and San Francisco Railroad Company against the Southern Railway Company and the Guaranty Trust Company of New York, to enjoin them from making or accepting any delivery of certificates for 9,985 shares of stock of the New Orleans

Terminal Company, deposited by the St. Louis and
San Francisco Railroad Company with the trust com-
pany under a voting trust agreement, or from declar-
ing any forfeiture in respect thereof, or from execut-
ing any assignment or conveyance thereof. The con-
troversy arises out of the following facts: In 1903 the
St. Louis and San Francisco Railroad Company and
the Southern Railway Company, hereinafter referred
to as the "Frisco Company" and the "Southern
Company," united in a plan to form a great terminal
company in New Orleans; it called for the conveyance
by the Frisco Company and the Southern Company of
their respective New Orleans terminals to a new cor-
poration, of which each should own one-half the stock.
The stock of the New Orleans Terminal Company was
to be $2,000,000, and it was to have an authorized bond
issue of $15,000,000. A joint lease of the property of
the new company was to be made to the Frisco Com-
pany and the Southern Company, each of which was
to pay by way of rental one-half of the interest on the
Terminal Company's bonds, and its proportion of the
Terminal Company's operating expenses. The Frisco
Company and the Southern Company were each to
choose three of the six directors of the Terminal Com-
pany. Under this plan the New Orleans Terminal
Company was formed, and the Frisco Company ac-
quired their half interest in its stock, which the
Southern Company now seeks to forfeit. The Ter-
minal Company made a joint lease with the Frisco and
Southern Company under date of July 1, 1903. The
lease called for the payment by each of the companies
as rental of one-half of the interest to accrue upon the
bonds of the Terminal Company. In order to facili-
tate the sale thereof the Frisco Company and the
Southern Company jointly and severally guaranteed
the bonds of the Terminal Company. On December

31, 1903, the Frisco Company and the Southern Company entered into a so-called voting trust agreement, under which each of the companies delivered to the Standard Trust Company of New York, since merged with the Guaranty Trust Company, its one-half of the stock of the Terminal Company, to secure their mutual protection in the premises and also the fulfillment of the purposes and intent of all the provisions of the original joint lease of July 1, 1903. After deducting directors' qualifying shares, the Frisco Company and the Southern Company each delivered 9,985 shares of the stock of the Terminal Company to the trustee, who is to vote the stock as they jointly direct, distribute to them dividends as received upon the stock and be a mere depository of the stock until the happening of a default by either company in paying its one-half of the obligations to the Terminal Company. Article 6 of said agreement provides that in the event of a default by either of the railway companies in the payment of the one-half of the guaranteed interest rental, and the continuance of such default for three months after notice by the trustee, " then *as a penalty therefor* any such default of either of the railway companies shall operate as a *forfeiture* of the shares of the capital stock of the Terminal Company originally deposited with the trustee by such defaulting railway company and shall vest the same in the other one of the railway companies, its successors or assigns, not in default, and thereupon the trustee shall and will execute all proper instruments declaring such forfeiture, which shall be conclusive evidence of the facts therein set forth, and shall and will also assign unto that one of the railway companies not in default, or upon its order, all of the shares of the capital stock of the Terminal Company then held by the trustee, and shall and will deliver the certificates of said stock

accordingly.'' From the formation of the Terminal
Company in 1903 up to the middle of 1913 the Frisco
Company and the Southern Company harmoniously co-
operated in the administration and development of the
New Orleans Terminal Company, which they had then
jointly created and jointly owned. Each company
semi-annually and punctually paid its one-half of the
interest of the bonds of the Terminal Company resting
upon the property which they jointly owned through
their ownership of the stock of the Terminal Company.
It appears that the payments made by the Frisco
Company by way of interest on these bonds alone
amounted during these ten years to upward of
$1,000,000. On June 15, 1913, the Frisco Company,
which had been placed in the hands of the plaintiffs
as receivers of the federal court on May 27, 1913,
failed to meet its half of the obligation resting upon
the common property and made default on account
of the receivership in the payment of $140,000 as its
one-half contribution to the semi-annual interest pay-
ment of $280,000 due July first on $14,000,000 of the
Terminal Company's bonds. The Southern Railway
Company thereupon set out to effectuate the absolute
forfeiture to its own use of the entire stock interest
of the Frisco Company in the New Orleans properties,
at the same time asserting the debt, together with the
Frisco Company's liability for future interest on the
Terminal Company's bonds, and the plaintiffs, as re-
ceivers of the Frisco Company, obtained a temporary
restraining order from this court, which they now
seek to have continued pending the trial of the action.
The plaintiffs contend that the provisions for for-
feiture in the trust agreement are void, and they pro-
test against the attempt of the Southern Railway
Company to forfeit absolutely the St. Louis and San
Francisco Railway Company's interest in the terminal

properties while leaving upon them half the burdens of ownership, that is, the burden of paying half the interest charges on the New Orleans Terminal Company's property for the next forty years. The plaintiffs allege that the property of the New Orleans Terminal Company is worth $6,000,000 over the amount of the bonds thereon, and claim that they still have the equity of redemption in the New Orleans Terminal stock, which is of such unique kind and value that it cannot be replaced nor its loss be measured by money damages. In short, the plaintiffs contend that the voting trust agreement above referred to was an instrument for security for the payment of obligations in the form of semi-annual interest on the bonds, and that therefore the provision for the forfeiture contained therein is void under the equitable principle of " once a mortgage always a mortgage." The defendant Southern Railway Company, on the other hand, contends that the voting trust agreement is an instrument not for security, but one " defining and qualifying the conditional character of the title of the railway companies to the stock." Attention is called to the fact that there was no debt whatever owing from the Frisco Company to the Southern Company until the latter answered for the former's default by paying the entire installment of interest due on the bonds July 1, 1913. The obligation of the Frisco Company to pay one-half the interest on the bonds is by way of rental for its use of the terminal, and whether or not the Southern Company can obtain another railroad company willing to assume the entire amount of such rental obligations of the Frisco Company cannot yet be determined. So long as the stock is impounded and in the possession of the trustee the Southern Company must continue to answer for the obligations of the Frisco Company, with slight chance of reimburse-

ment from the Frisco Company in view of its present insolvency. Defendant Southern Railway Company further protests that the stock of the Terminal Company is without value except for the purpose of control of the corporation; that it could be availed of beneficially only by a solvent and congenial railroad company entering New Orleans; that if offered publicly for sale upon foreclosure said stock might be bought in by an individual or corporation which would not assume any of the obligations of the Frisco Company under the lease, and that such purchaser would be in a position to cause irreparable injury to the Southern Company. The controversy hinges on the legal effect of the voting trust agreement. If it is an instrument to secure the payment of a debt or other obligation or incumbrance the forfeiture clause is void under the well-settled equitable rule and an injunction pending the trial should be granted. While the authorities uniformly hold that agreements for forfeiture of collateral are void, where one side alone has parted with value and takes collateral to secure its repayment, no authority is presented, nor have I been able to find any, which extends the rule to the case of a mutual agreement wherein both parties undertake performance on equal terms and conditions, and mutually agree that in the event of default by one party the other shall acquire all rights and title under the agreement. The plaintiff receivers contend that the principle of the equitable rule should be applied by extension to the case of the voting trust agreement in controversy as a matter of legal inference. Though not positively satisfied, I am inclined to the opinion that the voting trust agreement, while not an instrument to secure payment of a debt which existed at the time it was made, was nevertheless an instrument to secure the performance of obligations the breach of

which would necessarily create a debt, and that such a debt was within the contemplation of the parties at the time the agreement was made. I think, therefore, that the provision therein for forfeiture may be declared void and unenforcible upon a trial where all the facts and circumstances may warrant a conclusion which would prevail over the dry words of the agreement. It seems to me that the term " default " as used in the instrument is equivalent to and identical in significance with the term " debt," since the default relates to the payment of interest on a debt for which both parties were jointly and severally liable. Defendants lay stress on the fact that no debt was owing from the Frisco Company to the Southern Company at the time of making the agreement, nor until the latter answered for the former's default by paying the entire installment of interest due on the bonds July 1, 1913. But the debt was there. The fundamental debt owed by the Terminal Company to its bondholders was there and it was secured by a mortgage. If both the Frisco Company and the Southern Company defaulted in payment of interest on the bonds not even the bondholders could do more than satisfy the debt by foreclosure, were there a forfeiture provision in the mortgage. If there is any reason which would validate a forfeiture clause in the absence of a debt as between the parties at the time of making the voting trust agreement, when equity would declare void a forfeiture clause in a case where a debt did exist at the time of making the instrument, it has not been presented and does not occur to me. On the contrary, the proposition presents itself to my mind thus: If a debt in existence when the agreement was made will not justify a forfeiture, *a fortiori,* a debt which is only in contemplation at that time will not justify a forfeiture. A voting trust agreement may

suspend control, but that comparatively modern and useful device in corporate management has never yet gone so far as to forfeit title with the sanction of any court of equity. The Southern Company parted with no greater value, nor made any greater concession at the time of assigning their properties to the New Orleans Terminal Company, nor when making the voting trust agreement, than did the Frisco Company. The penalty insisted upon by the Southern Company, which would seize the property and still assert the debt, is inordinate when compared with the consequences of the default to the Southern Company, and in my opinion it should not receive sanction in equity; the more so when it is remembered that the default was not willful and that the plaintiffs are officers of the court resisting the forfeiture to protect creditors of the Frisco Company. The plaintiffs' remedy at law would be adequate, it seems to me, only in case the Southern Company sold the Frisco Company's half of the Terminal Company's stock for the highest price obtainable, or leased the terminal facilities to another railroad, paying rent therefor which would be applied in ratable exoneration of the Frisco Company's liability for interest on the Terminal Company's bonds whose maturity is forty years ahead. But with absolute title of all the Terminal Company stock the Southern Company would not be answerable for its disposition. It might sell the Frisco Company's share thereof for a nominal price to a congenial railroad company entering New Orleans, and still assert the debt against the Frisco Company, or it might prefer to keep the stock for itself, in view of an increase in value of the Terminal Company's property, and still assert the debt against the Frisco Company. It is conceded that the interest on the Terminal Company's bonds was to be paid by the two

railroad companies in lieu of rent for terminal facilities, each company paying half thereof.  If instead of depositing their stock both companies had deposited an equal sum of money with the trust company adequate to secure payment of the interest on the bonds, that is the rent, for a period of years, under an agreement that upon the default of either it should be dispossessed and forfeit to the other its remaining share of the deposit, the agreement would be identical in principle with the one actually adopted, in the sense that there would be no debt in existence as between the parties at the time the agreement was made.  Yet I believe the courts of this state would hold such a forfeiture provision void if the party in default was ousted of possession and it appeared, as is claimed by the plaintiffs herein, that the value to be forfeited was out of all proportion to the damages suffered or the probable loss.  The Court of Appeals has so held in similar cases between landlord and tenant involving deposits made by tenants to secure faithful performance of covenants in the lease.  While not citing the case of *Cæsar* v. *Rubinson*, 174 N. Y. 492, as an authority exactly in point, I think it lends fairness to the question raised by the plaintiffs herein, for as I read that opinion lack of mutuality was not essential to the decision arrived at.  In *Schrewsbury & C. R. Co.* v. *S. & B. R. Co.*, 1 Sim. (N. S.) 410, the court, although refusing the injunction on the ground that the injury to the plaintiffs was extremely small in comparison with the injury to the defendants, said that it was entitled to issue an injunction whenever it saw that there was a fair ground for litigation raised by the plaintiff; that the first point on which the court had to be satisfied was not positively that the plaintiff is right, but that he has a fair question to raise, and that when the alternative was interference or prob-

able destruction of the property the court would be ready to lend its immediate assistance, even at considerable risk, that it might be encroaching on what might eventually turn out to be a legal right of the defendant. A preliminary injunction to preserve the *status quo* may properly issue when the case requires a more careful consideration than can be given on the hearing of a motion (*Litchfield* v̇. *City of Brooklyn,* 10 Misc. Rep. 74), or when there is no denial of the act charged as contemplated and the injury threatened will not be easily remedied if the injunction is refused (*United States* v. *Duluth,* 1 Dillon, 474), or when the questions of law or fact to be ultimately determined in a suit are grave and difficult, and the injury to the moving party will be immediate, certain and great if it is denied, while the loss or inconvenience to the opposing party will be comparatively small if it is granted. *Denver & R. G. R. R. Co.* v. *United States,* 124 Fed. Rep. 156, and cases cited therein. See, also, *Harriman* v. *Northern Securities Co.,* 132 Fed. Rep. 464. With regard to the damage suffered by the Southern Company through the Frisco Company's default there are legal remedies, of which it is doubtless advised, the enforcement of which would secure to the Southern Company such relief as it is entitled to. The plaintiffs' failure to make any tender or any reference to a tender in their complaint is not important, as it seems to me, since the action is not brought to redeem the stock. The motion for an injunction *pendente lite* is granted on condition that plaintiffs give a sufficient undertaking, the amount of which will be determined on the settlement of the order on notice after oral argument.

Motion granted on condition plaintiffs give a sufficient undertaking.