THE FIRST NATIONAL BANK OF SEATTLE, Appellant, Respondent, *v.* HERMAN M. GIDDEN, Respondent, Appellant.

First Department, December 29, 1916.

Bills and notes — effect of acceptance of draft secured by warehouse receipt — liability on acceptance — failure of holder to produce draft or warehouse receipt when due — counterclaim.

A drawee of a bill of exchange with a bill of lading attached who, after the property had been received and a warehouse receipt substituted for the bill of lading, being unable to make payment accepted the draft and thereby agreed to pay it on or before a certain date, is liable irrespective of the warehouse receipt given to secure payment, and the fact that upon the presentation of the amount of the draft with interest, the holder thereof was unable to find the draft and warehouse receipt, did not relieve the drawee from liability upon his acceptance and is no defense in an action thereon.

In an action against a drawee of a draft with warehouse receipt attached as collateral security to enforce his liability as an acceptor, the defendant is not entitled to counterclaim for freight paid, pursuant to the terms of a contract with the drawer.

CROSS-APPEALS by the plaintiff, The First National Bank of Seattle, and by the defendant, Herman M. Gidden, from a judgment of the Supreme Court, entered in the office of the clerk of the county of New York on the 18th day of May, 1916, upon a dismissal of the complaint and of the counterclaim by direction of the court at the close of the case.

Plaintiff appeals from so much of the judgment as dismisses the complaint while defendant appeals from so much thereof as dismisses his counterclaim.

*Louis F. Doyle,* for the plaintiff.

*Frank Wasserman,* for the defendant.

MCLAUGHLIN, J. :

The plaintiff appeals from a dismissal of the complaint and defendant from a dismissal of his counterclaim.

The question presented is one of law, there being no dispute as to the material facts involved, which are briefly as follows:

On the 2d of September, 1914, Gorman & Co., a corporation engaged in packing and dealing in canned salmon at Seattle, Wash., entered into a contract with the defendant, doing business in the city of New York, under the terms of which the former sold to the latter 5,000 cases of salmon at a specified price, f. o. b., Pacific Coast Terminal shipping points, to be paid for by draft with bill of lading attached, payable on arrival of goods. On the twenty-eighth of September following Gorman & Co. shipped to the defendant at New York by the American-Hawaiian Steamship Company 4,000 cases of salmon — the difference in the quantity being covered by a provision in the contract which has no bearing on the question here presented. At the time of the shipment Gorman & Co. drew a draft for $13,691.50 on the defendant, with bill of lading attached, to the order of the plaintiff, payable on the arrival of the salmon. Gorman & Co. sold this draft, with the bill of lading attached, to the plaintiff, which credited them with its full amount, which they drew out prior to October 4, 1914. The draft, with the attached bill of lading, was then forwarded by plaintiff to the Irving National Bank of New York city for collection. After the salmon arrived in New York, and prior to November 30, 1914, the Irving National Bank presented the draft for payment, but payment was refused. On the date last mentioned T. J. Gorman, an officer of Gorman & Co., while in the city of New York, endeavored to get defendant to accept and pay the draft. The defendant desired an extension of time within which payment could be made, and the result of the negotiations was that an extension was given and the Irving National Bank thereupon sent the draft to the defendant's office, and he then placed upon it an acceptance in the following terms: "Accepted November 30th, 1914. Payable on or before Dec. 23d, as wanted, at the rate of $3.40 and $3.60 per case respectively, less 1½%, plus 6% interest from date." At the time of the acceptance the defendant paid the freight on the salmon amounting to $878.23, as he was required to do by the terms of the contract with Gorman & Co., and the salmon was thereupon stored in a warehouse and a warehouse receipt attached to the draft in lieu of the bill of lading. On December 23, 1914 — the day of maturity of the acceptance — no part having been previously paid — the defend-

ant sent to the Irving National Bank a certified check for the amount of the draft and interest, for the purpose of paying the same and obtaining the warehouse receipt. When the representative of the defendant reached the bank the draft and warehouse receipt could not be found, and the representative, after waiting some time, left without paying the draft or tendering the certified check in payment thereof. About twenty minutes of four in the afternoon of the same day the draft and receipt were found and a representative of the bank telephoned to the defendant's office, asked for the defendant, stated that he wanted to talk with him about a draft which was due that day, was informed he was not in the office; that he had left for the day, but would be there the following morning. On the following day the draft was presented several times at defendant's office and payment demanded, which defendant refused without assigning any reason therefor, other than that he had intended to ship part of the salmon to Porto Rico, but owing to his not being able to get the receipt in time the day before had been unable to make the shipment. Subsequently the plaintiff sold the salmon at public auction, realizing $10,029.38 and the same was applied in part payment of the draft. This action was then brought to recover the balance of the draft, $3,662.12, with interest. The defendant set up as a defense, among others, the fact that he had, on the 23d of December, 1914, offered to pay the draft and demanded the delivery of it and the warehouse receipt, which offer and delivery were refused; also that he had an order for 2,000 cases of the salmon which he could not fill, by reason of not having the warehouse receipt; and as a counterclaim the amount of the freight paid. The learned trial court dismissed the complaint on the ground that defendant, under his contract with Gorman & Co. for the purchase of the salmon, and the terms of his acceptance of the draft, was entitled to the delivery of the salmon on the day of maturity of his acceptance and that the draft and warehouse receipt not having then been delivered to him, he was discharged from all liability upon the draft. He also dismissed the counterclaim upon the ground that defendant's claim to reimbursement for the payment made was against Gorman & Co., and not the plaintiff. Judgment was

entered to this effect, from which, as before stated, each of the parties appeals.

The bill of lading and warehouse receipt subsequently substituted for it were held by plaintiff as collateral security for the payment of the draft which it had cashed for Gorman & Co. It was the ordinary transaction of collateral to secure the payment of a bill of exchange, collateral security and nothing else. (*Dows* v. *National Exchange Bank,* 91 U. S. 618.) When the defendant accepted the draft he thereupon became obligated to pay it irrespective of the collateral which had been given to secure its payment. (2 Rand. Com. Paper [2d ed.], § 1070; Neg. Inst. Law [Consol. Laws, chap. 38; Laws of 1909, chap. 43], §§ 112, 130.) It is not even suggested in the record that at the time the defendant accepted the draft there was any condition imposed upon the acceptance relating to the delivery of the warehouse receipt other than that implied by law where collateral accompanies such instrument. It is true there was a special arrangement permitting the defendant to make partial payments and receive partial deliveries of the salmon, but he did not take advantage of such agreement; on the contrary, he waited until the whole amount of the draft was due, and then simply by informing the bank that he had a certified check for its payment, because the draft and warehouse receipt were not at once delivered, it is contended he was absolutely relieved from liability. Obviously, he could not discharge his obligation to pay the draft in that way. Even though the draft and warehouse receipt were not delivered he still remained liable to the bank upon his acceptance, and his obligation was to pay the amount called for with interest. Upon payment of the draft plaintiff of course was bound to surrender the warehouse receipt, as it would have been to surrender any other collateral upon payment of the debt for which it was pledged. But a failure to surrender the warehouse receipt did not constitute a defense to an action on the acceptance. It may be conceded that tender of the amount due discharged the plaintiff's lien on the salmon, and defendant could have replevied the same; or, if damages had been sustained, interposed a counterclaim, or maintained an action for conversion. (*Cass* v. *Higenbotam,* 100 N. Y. 248;

*Reusens* v. *Arkenburgh*, 135 App. Div. 75.) But the fact that the collateral was not surrendered when a tender of payment was made of the draft did not relieve the defendant from his obligation to pay. That obligation continued. It was not affected by the tender or by plaintiff's neglect to return the collateral. While defendant set up facts showing a tender, no affirmative relief was asked upon that ground — the only relief sought being a recovery of the freight paid.

There are numerous authorities to the effect that where the drawee of a negotiable bill of exchange has accepted it, he is bound to pay in accordance with the terms of acceptance, and having paid, even under a mistake of fact, he cannot recover back the money paid, though the bills of lading accompanying the draft, and upon which he relied in accepting it, subsequently prove to be fictitious and the goods are never received. (*Hoffman & Co.* v. *Bank of Milwaukee*, 12 Wall. 181; *Goetz* v. *Bank of Kansas City*, 119 U. S. 551; *First National Bank* v. *Burkham*, 32 Mich. 328.)

Nor was the defendant entitled to recover on his counterclaim. Under the agreement with Gorman & Co. the defendant obligated himself to pay the freight on the salmon and in making such payment he was simply carrying out his agreement with that firm.

My conclusion is that the appeal taken by defendant from so much of the judgment as dismissed the counterclaim should be affirmed, and the appeal by plaintiff from so much of the judgment as dismissed the complaint should be reversed and, there being no dispute as to the facts, judgment should be directed in favor of the plaintiff for the amount of the draft, less the proceeds derived from the sale of the salmon, with interest and costs in this court and the court below.

CLARKE, P. J., LAUGHLIN, SCOTT and DOWLING, JJ., concurred.

On defendant's appeal judgment affirmed; on plaintiff's appeal judgment reversed and judgment ordered for plaintiff as stated in opinion, with costs in this court and in the court below. Order to be settled on notice.