FIRST TRUST AND DEPOSIT COMPANY, Plaintiff, *v.* EUNICE S. POTTER, Defendant.

Supreme Court, Onondaga County, April 11, 1935.

*Hiscock, Cowie & Bruce,* for the plaintiff, for the motion.

*Costello, Cooney & Fearon,* for the defendant, opposed.

SMITH (E. N.), J.: The complaint is in the usual form for an action on a promissory note, excepting that it alleges that the note is secured by collateral. It alleges that on or about October 29, 1934, the defendant made and for value delivered to the plaintiff a certain collateral promissory note in which she promised to pay to the plaintiff one month after date the sum of $29,014.78, with interest, at the office of the plaintiff; alleges that demand for payment of the note was duly made at the time and place where by its terms it was made payable; that no part of the note has been paid, excepting certain immaterial items, and asks judgment for $29,009.21, with interest on $29,014.78 from November 30, 1934, to December 19, 1934, and interest on $29,009.21 from December 19, 1934.

The answer admits the execution and delivery of said note; denies that the interest to be paid thereon was at the rate of six per cent; that the demand for payment thereof was made, and the allegations as to certain partial payments; and then

" For a separate and partial defense to the alleged cause of action set forth in the complaint, the defendant alleges   *   *   *

" 6. That there was attached to the note referred to in the complaint certain collateral security and *that said collateral security is still held and retained by the plaintiff herein,"* and demands judgment dismissing the complaint.

Upon this motion for summary judgment the plaintiff submits an affidavit which sets forth at length the transactions between the parties in respect of this collateral note and shows that on or about April 17, 1933, the defendant made a renewal note, and that upon the execution of such renewal note plaintiff agreed to and accepted a reduction of the rate of interest from six per cent to three per cent, retroactive from March 4, 1933, and that the defendant paid the interest at this rate to November 30, 1934,

which was the due date of the note upon which this action is brought; that since the commencement of the action certain dividends upon the securities held as collateral have been received and have been applied, $5.57 upon principal and the balance to the interest, and that the interest has been paid in such manner up to February 16, 1935, leaving due upon the note $29,009.21 of principal, with interest from February 16, 1935. Attached to plaintiff's affidavit and made a part of it is a photostatic copy of the note in question.

In her replying affidavit the defendant makes no answer to the plaintiff's affidavit affecting the right of the plaintiff to summary judgment, unless it be the allegation which reads as follows: " That the plaintiff has failed to apply the * * * collateral in reduction of the amount due on said note and has failed to tender the return of said collateral to defendant. That the plaintiff is asking for judgment for the full amount of said note, with interest thereon, subject to the deductions heretofore mentioned, and is *also seeking to retain possession of said collateral. That the said collateral security for the note in suit is of such nature and so indorsed that plaintiff can negotiate it and make good title thereof in a transferee free from any claim of the defendant.*"

The material allegations of the complaint and of the plaintiff's affidavit stand admitted. It follows from the answer and the defendant's affidavit that her only contention is that the plaintiff has no right to judgment upon the note until it shall have either sold the collateral and credited the proceeds of such sale upon the note, or shall have tendered a return of the collateral to the defendant. No other contention is urged by her counsel against the motion for summary judgment.

It will be noted in this connection that there is no dispute between the parties as to the amount due on the note; that there is no allegation in the answer of conversion; nor is there any allegation of a demand that the plaintiff sell the collateral; there is also no dispute of the fact that the plaintiff still has the collateral, except as allegations, immaterial here, in respect of the number of shares of certain of the stocks held as collateral by the plaintiff.

The affidavit of the plaintiff further shows that it has all the securities listed on the note, excepting the $62.68 treasurer's check, which has been disposed of and credited upon the note, and excepting ten shares of United Aircraft stock which were exchanged for ten shares of new stock of United Aircraft, plus five United Airlines Transport Corporation voting trust certificates, and plus two and one-half shares of Beeing Airplane Company capital stock, by plaintiff with the knowledge, consent and at the request of the

defendant herein on or about November 24, 1934. There is no denial by the defendant of these facts, except that in her affidavit the defendant states that plaintiff has five more shares of International Telephone and Telegraph stock and two more shares of Radio Corporation common stock than listed in said affidavit. Schedule A is the collateral note, by which it appears that a part of the collateral was 105 shares of International Telegraph and Telephone and 654 shares of Radio Corporation common; so far as this motion is concerned, this allegation raises no material question. The defendant does not claim that the plaintiff has disposed of any of the collateral; on the contrary, she alleges that it has the collateral.

The sole question remains, as above stated, whether plaintiff is entitled to summary judgment without at the time of the demand either tendering or without alleging in its complaint that it has the collateral ready for delivery upon the payment of the note.

The collateral note is a printed form note, with blanks filled in showing the date of the note, the amount thereof, the collateral deposited, the signature of the maker of the note, the rate of interest and a notation " 3%." The instrument constitutes the whole contract between the parties and is made up of two parts: (1) The promise to pay $29,014.78, and (2) the recital of deposit of collateral, together with certain other provisions, which, so far as material on this motion, are as follows: " Upon default in any payment of principal or interest at the times or on the terms herein provided, or upon the nonperformance of the undersigned of any of the agreements or conditions herein contained, * * * this note shall at the absolute option of said Trust Company become immediately due and payable, and in such event said Trust Company is *authorized* to sell the whole or any part of the aforesaid collateral or any substitutes therefor or additions thereto at any broker's board or at public or private sale, at the option of the Trust Company, without notice of the amount due or claimed to be due, without demand of payment, without advertisement and without notice of sale, each and all of which is hereby expressly waived; and to apply the net proceeds of such sale * * * to the payment of this note, * * * returning the overplus, if any, to the undersigned, *who shall remain liable for any deficiency* arising upon such sale, with legal interest."

Plaintiff's only claim of default on the part of the defendant is her failure to pay the note when it matured.

The problems implicit in consideration of a question of this type arise from the instrument itself, which at once creates the relationship of *debtor and creditor* and that of *pledgor and pledgee*. So far

as the relationship of debtor and creditor is concerned there are only questions of law, while, so far as the relationship of pledgor and pledgee is concerned, we also have questions of equity. Stated more simply, the problem with respect to this instrument is, what questions of law are there; what questions of equity are there; where does the law end and where does equity begin, or, being in the same instrument, do they coalesce?

In the absence of any provision, statutory or contractual, or other lawful agreement *aliunde* the instrument, the law has been and is that the holder of a promise to pay money, where the promise is secured by collateral, may, upon default in the payment of the debt according to the terms of the instrument, either bring an action on the promise to pay, or sell the pledged collateral without judicial process, upon such notice, if any, as may be required, or bring suit to foreclose the pledge and obtain a judicial sale thereof. The obligation of the debtor to pay the debt is the same as if no security had been given, and the recovery of a judgment in an action upon the debt does not in any way impair or affect the lien of the creditor on the collateral security held by him; nor is the pledgee of the collateral required to return the security as a condition precedent to an action upon the debt. (49 C. J. 980; 21 R. C. L. 687, and cases cited; *Lincoln* v. *Linde,* 27 Abb. N. C. 278; *Bowman* v. *Hoffman,* 20 N. Y. Supp. 415; *People* v. *Remington,* 121 N. Y. 328; *DeCordova* v. *Barnum,* 130 id. 615; *Jenkins* v. *Conklin,* 146 App. Div. 301; *Ketcham* v. *Provost,* 156 id. 477; affd., 215 N. Y. 631; *First National Bank of Seattle* v. *Gidden,* 175 App. Div. 563; affd., 225 N. Y. 628; *National Bank of Rochester* v. *Erion-Haynes Realty Co.,* 213 App. Div. 54; *Toplitz* v. *Bauer,* 161 N. Y. 325, 331; *Hills* v. *Flynn,* 161 App. Div. 127.)

The clear separation of the rights of the holder of an obligation secured by collateral under the promise and his rights as pledgee of collateral is well illustrated by the fact that, even though the Statute of Limitations may have run against the debt, such fact does not defeat the right of the creditor as pledgee to recover upon the pledge. (*Hills* v. *Flynn, supra; House* v. *Carr,* 185 N. Y. 453.)

So much for the law side of the question. Now for an inquiry as to the rights and duties of a pledgee. A pledgee is a trustee for the owner; he is not permitted to deal with the trust property excepting in that capacity and according to the terms of the agreement. (*Toplitz* v. *Bauer, supra.*)

While no attempt will be made to enumerate all of the attributes of a collateral security situation, or all the rights and duties or obligations growing out of this relationship, it may be of value to note certain of them. A pledgee has a right to exact strict

performance of the contract (*Toplitz* v. *Bauer, supra*); upon default in payment of the obligation, the title in the pledge does not vest in the pledgee but still remains in the pledgor, subject of course to the trusteeship (*Markham* v. *Jaudon*, 41 N. Y. 235); depreciation of the value of property through negligence of the pledgee imposes on him liability for such negligence to the pledgor (*Ouderkirk* v. *Central National Bank*, 119 N. Y. 263); where a pledgee is not required to sell collateral, he is not compelled to sell it, even though he is authorized and even requested to do so by the pledgor (*Howell* v. *Dimock*, 15 App. Div. 102); the possibility of a question of negligence exists where the pledge has a " fluctuating value; " it is to be assumed, however, that such " fluctuating value " would have to arise from the nature of the security itself, rather than from a general fluctuation in value of all securities; one could hardly be charged with negligence in selling or failing to sell collateral securities in such a period as this, when, under the present changing conditions, varying each day, in such a period of depression as that in which we now are, it would take the highest of wisdom to determine whether it is better to sell than to hold; even after the commencement of an action the defendant pledgor may tender the amount due on the note, with costs, on condition that the plaintiff pledgee return the property pledged, and if the plaintiff refuse to accept the tender he may be charged with the value of the property pledged as a credit upon the note (*Cass* v. *Higenbotam*, 100 N. Y. 248); a provision in the contract that the absolute property in the collateral pledged shall, upon default, vest in the pledgee, is void (*West* v. *Guaranty Trust Co. of New York*, 83 Misc. 609; *Vickers* v. *Battershall*, 84 Hun, 496); in the absence of negligence or other wrongful act on the part of the pledgee, mere depreciation in value of collateral will not be allowed as a setoff (*Taggard* v. *Curtenius*, 15 Wend. 155); a pledgee, in the absence of special agreement, is under no obligation, in case of the pledgor's default, to sell collateral, but he may sell it or not, at his option; he is not liable for depreciation in the value of the property, after a default in payment, for failure to sell, but only for damages resulting from bad faith or negligence (*Field* v. *Leavitt*, 37 N. Y. Super. Ct. 215); as a general rule, without provision in the contract, a pledgee has no right to sell the collateral upon default in the payment of the debt until he shall have made demand (*Bryan* v. *Baldwin*, 52 N. Y. 232; *Markham* v. *Jaudon*, 41 id. 235; *Wheeler* v. *Newbould*, 16 id. 392; *Wilson* v. *Little*, 2 id. 443; *Smith* v. *Craig*, 211 id. 456; *Smith* v. *Savin*, 141 id. 315; *Stewart* v. *Drake*, 46 id. 449; *Stenton* v. *Jerome*, 54 id. 480); the right of the pledgee to sell without notice, stipulated in the contract, may be waived, and such waiver requires

no new or independent consideration (*Toplitz* v. *Bauer, supra*); such waiver may be express (*Manning* v. *Heidelbach*, 153 App. Div. 790), or it may be implied from the pledgee's conduct (*Bailey* v. *American Deposit & Loan Co.*, 52 App. Div. 402; affd., 165 N. Y. 672; *Toplitz* v. *Bauer, supra; Furber* v. *National Metal Co.*, 118 App. Div. 263; affd., 193 N. Y. 622); the pledgee may not become a purchaser upon the sale, unless especially authorized to do so (*Bryan* v. *Baldwin, supra; Roach* v. *Duckworth*, 95 N. Y. 391); irrespective of other remedies, the pledgee may, at his option, file a bill in equity for the foreclosure of the pledge, under order of the court (*Briggs* v. *Oliver*, 68 N. Y. 336).

The foregoing citations and statements are sufficient to show the dual relationships, the nature thereof, and the rights and duties growing out of them. While some of the decisions fail to keep separation between the right to maintain an action at law and equitable rights under a collateral instrument, as between the maker and holder thereof, still the line of demarkation is sufficiently clear and leads to the conclusion, as above stated, that, at common law and in the absence of statutory or contractual provision to the contrary, a party holding collateral security for a debt may sue upon that debt without first resorting to the pledge.

The court may not change the applicable rules of law or of equity merely because the financial depression through which we are passing has placed such grave burdens not only upon individuals but also upon institutions of credit, such as banks. We may not inquire into the circumstances of this case, except as they are revealed in the moving papers. It may be that now is the worst possible time in which to sell or dispose of collateral, and that to do so at this time would cause irreparable loss to a debtor and to the creditor, and that on that account an institution of credit holding collateral may, upon economic grounds, hesitate to sell. Having strict regard for the legal rights of its debtors, a bank's duty is primarily to its depositors, secondarily to its stockholders, and thirdly to the public, and it, therefore, should use reasonable effort to protect itself against possible loss.

Diligent search has failed to bring to my attention any statutory provision which in any wise changes or modifies the common-law views as above stated.

By section 1083-b of the Civil Practice Act the Legislature has provided that in an action upon a bond with a mortgage held as collateral thereto the debtor is entitled to set off the fair and reasonable market value of the mortgaged property as against the amount due upon the bond. This section constitutes so-called emergency legislation; while the analogy is apparent, its provisions

can by no implication be extended to the case of a promissory note where personal property is held as collateral to it.

Sections 261 and 266 of the Civil Practice Act have no application, for the reason that the allegation of the fact that the plaintiff has collateral as security to the debt does not constitute the allegation of a counterclaim. The situation might be different if there were a defendant here who was an indorser of the note. (*National Bank of Rochester* v. *Erion-Haynes Realty Co.*, 213 App. Div. 54.)

Now as to the contract. As we have seen, the provisions of the collateral note *authorize* the sale of the collateral upon default; they do not direct the sale; it is at the pledgee's option. While it may be argued that, on account of the wording of the instrument, the intent was that, in the first instance, before a recovery on the note be had, there should be realization upon the collateral, that reasoning is specious. If the pledgee had chosen to sell the collateral, the law would compel the application of the proceeds to the payment of the note and the pledgor would have remained liable for any deficiency after such application. The instrument itself, having merely provided what the law would enforce, should have been explicit on the subject that the right of recovery on the note was conditioned upon the prior realization upon the collateral, if such had been the meaning.

There being no allegation of conversion or of negligence, and no duty on the part of the pledgee to sell, what answer has the defendant offered on this motion for summary judgment which would defeat the right of the plaintiff thereto?

The sole reliance of the defendant is the case of *Jenkins* v. *Conklin* (146 App. Div. 301). This was a stockbroker's case, where securities had been bought on a margin, and the action was upon the account; it appeared upon the trial that there remained in the account unsold collateral. The allegation of the answer was a denial of all the material allegations of the complaint. The record in that case shows that, after statement by counsel for the plaintiff, a motion was made by the defendant to dismiss the complaint upon the opening. Upon this motion plaintiff's counsel admitted that plaintiff still held the stock as collateral for the debt and that the certificates were so indorsed that the plaintiff could negotiate them and give to a transferee good title to the stock. Thereupon defendant moved for a dismissal of the complaint. The ground upon which this motion was made was that " the opening and pleadings show, the plaintiff either has or has not this certificate of stock at the present time. If they have it and demand the purchase price, they should have pleaded and

made a tender and a demand for payment. If they have not got it, they have exercised ownership over the stock unlawfully, and there should appear a credit to the defendant or at least some indication from the pleadings as to what has become of the stock." The motion was granted; there was a stay of entry of judgment pending a motion for a new trial, and upon this motion the justice presiding at the trial rendered his opinion, as follows: " The debt sued for is alleged to have been payable on demand; nevertheless no actual demand before suit was necessary, and a tender of the collateral before suit, which is only an incident of a valid and effectual demand, was by the same token not a condition of the right to sue for the debt. But the right to actual payment of the debt is conditioned upon surrender of the collateral, and the complaint should have alleged a readiness to make such surrender or at least plaintiff should have produced the collateral upon the trial and make his offer then. This he did not do, and insisted that he was not bound to do. Upon this I dismissed the complaint and took up the question on motion for a new trial. I think the case was properly disposed of (*Ocean Bank* v. *Fant*, 50 N. Y. 474; *Field* v. *Sibley*, 74 App. Div. 81; affd., 174 N. Y. 514; *Spencer* v. *Drake*, 84 App. Div. 272)." The Appellate Division affirmed the order, with the proviso that the dismissal of the complaint was not upon the merits.

This decision on its face confuses a situation which it seems to me is otherwise clear. It is apparently so out of touch with the decisions to which I have called attention that it would seem that there is something faulty in its logic. A study of the record helps to clarify. The dismissal of the complaint rests upon the fact that counsel for the plaintiff stated in his opening that the plaintiff held securities collateral to the note, and this statement was given the same force and effect as if the complaint had alleged the fact; the answer remaining as it was, there was a general denial of the fact, and the only answer the plaintiff could have made thereto would have been the production of the collateral in court, showing that there had been no sale or conversion, and that upon the payment of the debt the plaintiff was in position to deliver to the debtor the collateral. This he refused to do.

Here, the situation is entirely different; instead of denying the possession of the collateral in the plaintiff, the defendant in her answer asserts it, thereby negativing the idea of a conversion. This is not a trial, but a motion for summary judgment on the ground that there are no issues raised by the answer. In the *Jenkins* case there was a denial of all the material allegations of the complaint, which forced a trial. The answer was not frivolous,

and the present provisions in reference to the rules as to summary judgment did not then exist. There is here no trial and no occasion to make any tender of the collateral; the facts are clear and undisputed; the defendant alleges and has made no tender of payment, which, upon being made, would have entitled her to a return of the collateral as a matter of law or have subjected the plaintiff to the charge of having converted it. This is not a case where recovery was sought against an indorser (*Ocean National Bank of N. Y.* v. *Fant,* 50 N. Y. 474; *Conlew, Inc.,* v. *Newman,* 240 App. Div. 511); nor was there any occasion for a demand, even where a note is accompanied by collateral. (*Field* v. *Sibley,* 74 App. Div. 81; affd., 174 N. Y. 514; *Spencer* v. *Drake,* 84 App. Div. 272.) In these cases the notes provided that they were payable upon return of the securities. In the *Field* case Justice JENKS, in his opinion, said: " I see no reason why the fact that the note was accompanied by collateral which related solely to it should vary the rule." In the *Spencer* case Justice INGRAHAM, writing the opinion, states that the question presented was, whether a demand before the commencement of the action, with a tender of the securities, was necessary, and, following the *Field* case, held that it was unnecessary.

It is true that there is in the complaint no allegation of tender of the collateral to the defendant at the time of the demand. The demand of course was made at the office of the plaintiff, where the note was payable. There was no occasion to tender the collateral, or to allege such tender; nor is any claim made here, in the papers upon this motion, of failure to tender. The defendant was the one to make the tender, to entitle her to get the collateral. I think that in the *Jenkins* case there is a misuse of the word " tender " in its normal, legal sense. There was no more occasion of tendering the collateral than there was of tendering the note; upon the payment of the note the return of the collateral followed as of course; there was nothing that the plaintiff had to do in reference to the collateral until it had received tender of payment of the note. Upon default in payment of a promissory note the plaintiff does not have to tender the note as a condition precedent to the right of recovery. Upon denial, the plaintiff must prove the note and his possession of it.

For the foregoing reasons, plaintiff's motion for summary judgment should be granted. While there is nothing here that defeats the right of the plaintiff to the recovery of a judgment for the amount due upon the debt, with interest thereon, there may be, under all the circumstances, equitable considerations which may be urged against the sale upon execution of other property of the defendant than the collateral prior to the sale of such collateral;

there may be a question of marshaling of assets here; there may be certain equitable considerations which are not before the court for decision now.

The plaintiff is entitled to judgment against the defendant for $29,009.21, with interest from February 16, 1935, with costs of the action and ten dollars costs of the motion.

Ordered accordingly.