The Jefferson County National Bank, Plaintiff, *v.* Nicholas
D. Dusckas, Defendant.   (Action No. 1.)

The Jefferson County National Bank, Plaintiff, *v.* Nicholas
D. Dusckas, Defendant.   (Action No. 2.)

Supreme Court, Jefferson County, February 12, 1938.

*Phelps, Hudson & Wise*, for the plaintiff.

*Daniel Pananicles*, for the defendant.

SMITH (E. N.), J.  The plaintiff holds two promissory notes of the defendant, one, dated September 27, 1937, a discounted note, payable three months after date, in the sum of $5,300, due December 27, 1937; the other, dated October 2, 1937, payable three months after date, with interest at four per cent, in the sum of $12,800, due January 2, 1938, which latter note is upon a collateral form and is secured by collateral listed thereon.  On or about December 21, 1937, the plaintiff notified the defendant that it would not renew these notes or either of them at maturity, and demanded that the defendant pay them in full on or before their respective maturity dates, as follows: $5,300 on December 27, 1937, and $12,800, with $128 interest, total $12,928, on January 2, 1938. On December 27, 1937, the defendant failed to pay the $5,300

promissory note due on that date, and the plaintiff set off the balance of the money the defendant had on deposit with the plaintiff, in the sum of $496.78, and applied said amount upon said note, leaving the balance due thereon $4,803.22. On the 28th day of December, 1937, the plaintiff brought action No. 1 to recover such balance. On the 2d day of January, 1938, the defendant was in default in the payment of the second promissory (collateral) note of $12,800, and, without resort to the collateral, on the 6th of January, 1938, the plaintiff brought action No. 2 to recover the amount of said note, to wit, the sum of $12,800, with interest thereon at the rate of four per cent per annum from October 2, 1937, less $15, paid thereon on the 4th day of January, 1938.

In action No. 1 the defendant served an answer, verified January 7, 1938. In action No. 2 the defendant served an answer, verified January 18, 1938. In neither of the answers does the defendant raise any issue controverting any of the allegations in either complaint, but in each of his answers he makes identical allegations as a defense and as a counterclaim, and, on account of these identical allegations, seeks to recover from the plaintiff an affirmative judgment in the sum of $15,000.

The plaintiff moves in each action for an order striking out the answer of the defendant on the ground that the answer constitutes no defense and alleges no basis for a counterclaim, and for judgments as prayed for in each complaint.

There has been no consolidation of these actions, and, there being a separate motion in each, each motion must be separately considered, although, as the answers by way of defense and counterclaim are identical, the consideration here of the answer in one motion will be the same as in the other. The motions were argued together, and briefs have been submitted entitled in both actions. If the answers of the defendant, upon the uncontroverted facts shown by the pleadings and the affidavits submitted by the parties upon the motions, fail to set up a valid defense, or, so far as counterclaim is concerned, a cause of action, or if it appears by the uncontroverted facts deducible from the pleadings and the affidavits submitted by the parties upon the motions that there is no real defense or no real counterclaim, then the motions of the plaintiff should be granted; otherwise, denied. (*Curry* v. *MacKenzie*, 239 N. Y. 267; *Barrett* v. *Jacobs*, 255 id. 520.)

*First, as to action No. 2:* In this action, which is upon a note secured by collateral and on a collateral form, the plaintiff seeks to recover judgment upon the promise without resort to the collateral it holds as security for the payment of the note. This the plaintiff **has a right** to do; that is, upon default in payment, it need not first

resort to collateral and sue to recover any deficiency after the application of the proceeds of the collateral, but may sue directly upon the promise. (*First Trust & Deposit Co.* v. *Potter*, 155 Misc. 106, 110; *Kress* v. *Central Trust Co.*, 246 App. Div. 76, 78.)

It is evident that the allegations of the answers, to which particular attention later will be called, constitute no defense in either action to the claim of the plaintiff, excepting by way of counterclaim to the extent of any damages which, on account of the allegations of the answers, the defendant might recover affirmatively against the plaintiff.

Under such circumstances it is clear that the defendant has here, in effect, two causes of action by way of counterclaim, based upon the same set of facts. May we have two causes of action at the same time to recover the same damages upon the same cause or causes of action? It is evident that, having set up these bases of recovery in action No. 1, he in that action, if he be entitled to recover, will recover full relief; he may not try the action on the counterclaim a second time in action No. 2. Action No. 1 was at issue first, and if the defendant would recover damages on his counterclaim he must recover them in that action; he cannot recover in both. Had he moved to consolidate the actions, and had that motion been granted, the situation might have been different, for the reason that under such circumstances there would have been in effect only one action upon the causes of action set up in the counterclaim. But that has not been done, and we must take the situation as it is.

The ruling above made is amply supported by authority. (*Tuckerman* v. *Corbin*, 66 How. Pr. 404, and cases cited; *Security Trust Co.* v. *Pritchard*, 122 Misc. 760.)

Irrespective of the questions as to whether the counterclaims set up a basis for affirmative relief by way of damages, the motion of the plaintiff in action No. 2 to strike out the answer and for judgment as demanded in the complaint must be granted.

*As to action No. 1:* In the answer there are set up two bases for damages by way of counterclaims. The first of these is set up in paragraphs 1 to 7, inclusive, which seems to be founded upon alleged negligence on the part of the plaintiff in failing to sell the securities of the defendant held by it as collateral in March, 1937, at a time when the market value thereof was greater than at the time when this action was brought; the second, at paragraph 8 of the answer, where the defendant seeks to recover damages by way of claimed injury to his credit by reason of the application by the plaintiff of the amount of his cash balance on deposit in his checking account upon the note of $5,300 in action No. 1, and dishonoring checks drawn by defendant on that account.

As the second counterclaim basis arises solely in connection with the $5,300 promissory note, to recover upon which action No. 1 is brought, I will first consider that. The allegation is to the following effect: That the defendant had on deposit with the plaintiff various sums of money, part of which were in a checking account, against which he issued checks in payment of bills, and that plaintiff willfully and wantonly and intentionally refused payment of said checks, returning the same with the notation " No Funds," although defendant had in said account almost twice as much as was necessary to cover said checks; that the said checks were dishonored without warning to the defendant herein, with the full knowledge on the part of the plaintiff as to the state of his account, and the defendant was, by reason of said acts of the plaintiff, placed in the eyes of the public in the attitude of a person who had drawn worthless checks. The defendant's note was due and was in default of payment. It has long been the rule in this State that, when there is a deposit in a bank in a general, as distinguished from a special account, the bank is at liberty, at will, in the absence of any agreement to the contrary, to apply the money on deposit upon an indebtedness then due at the bank from the depositor. (*Straus* v. *T. N. Bank*, 122 N. Y. 379; *Updike* v. *Manufacturers Trust Co.*, 243 App. Div. 15; affd., 267 N. Y. 528; *Kress* v. *Central Trust Co.*, 246 App. Div. 76, 78; *Gerseta Corp.* v. *Equitable Trust Co.*, 241 N. Y. 418; *Long Beach Trust Co.* v. *Warsaw*, 264 id. 331, 334.) The right of setoff of a deposit as against a matured obligation is based upon the principle that recovery should be had only for the balance due upon mutual accounts. The questions in reference to setoffs usually arise in cases of insolvency and as affecting the rights of other creditors. Here we have default in payment, but as yet no legal status of insolvency; but default in payment gives the right of setoff, in the absence of agreement to the contrary. The answers contain no allegation of any such agreement. Were this all, the motion must needs be granted as to this counterclaim.

The defendant claims that there was such an agreement, not a general agreement, but an agreement affecting outstanding checks drawn by him against his checking account in said bank. The defendant has made no motion for permission to serve an amended answer. He does, however, by his answering affidavit, verified January 26, 1938, depose and say that, immediately upon receipt of the communication from the plaintiff, under date of about December 21, 1937, which was the communication in which the plaintiff gave notice that it could not or would not renew defendant's notes, and calling upon him to pay them upon maturity, he went to the plaintiff seeking an explanation, and " took up with the said

Cashier the question of the money that was on deposit in the checking account;" that he was assured that this account would not be interfered with; that he definitely told said cashier that he had issued checks on the same, and that the plaintiff, through its officers, assured the defendant that the checks would be paid upon presentation, and that he explained to the plaintiff bank that if the same were not to be honored he wanted to know that definitely, so that he could make arrangements to pay the checks with cash or call them back from the people to whom they were issued, so that they might not be presented and embarrass the defendant; whereupon he was advised not to worry, as the same would be paid; that, relying on said statements, he permitted the payees of said checks to present the same, and that upon presentation the bank refused to pay the same.

In his affidavit, verified the 18th day of January, 1938, E. Kenneth Hanson, assistant cashier of the plaintiff, shows that, after the closing of said bank December 27, 1937, he informed the president of the bank that the defendant's note of $5,300, which matured on that date, had not been paid, and was directed by said president to offset against the same the amounts then on deposit with said bank in the name of said defendant, which was then done; and, in an affidavit, verified January 26, 1938, said Hanson categorically denies the allegations above quoted from the defendant's affidavit of January 26, 1938, and further alleges that he informed said defendant that the setoffs of his account would be made; and further alleges " that after said offsets had been made he called said Dusckas on the phone, so informed him, advised him that a certain check or checks had come in for payment, that there was no money with which to pay the same, and advised Dusckas to bring in a sufficient amount of money with which to pay said checks; that if this were not done the bank would have to return the same; that said Dusckas declined to bring in any money or to take care of said checks, whereupon the same were returned."

While the affidavit of the defendant is of no importance in opposition to the motion for summary judgment, and, therefore, the motion of the plaintiff must be granted, the affidavit may be of value as bearing upon the question whether the motion should be granted conditionally and unless the defendant serve within a definite time an amended answer.

Where, as here, the plaintiff had an absolute right to make the setoff, it would seem that either it should appear that there was consideration for the agreement or that the agreement was in writing. No consideration is alleged, nor is there any agreement

in writing pursuant to which the plaintiff gave up its right of setoff. If, however, it might be claimed by the defendant that he was led on to draw checks by the conduct of the plaintiff, with the assurance that they would be paid out of his balance in the bank, and that he was led, to his disadvantage, to draw checks upon that assumption, there is here the undisputed fact in the case that before returning these checks the defendant was advised as to the setoff and as to the presence of his checks drawn on his account in which there was then no balance, and that he was given opportunity to make good these checks, which he neglected and refused to do. Under these circumstances can he be heard to claim that he suffered any damage by reason of the conduct of the plaintiff in doing what it had a legal right to do? Is there is any basis here, upon these facts, for a condition or a limitation upon the granting of plaintiff's motion? I think not; and, therefore, this allegation of the counterclaim must be dismissed. If it be a fact that the plaintiff did hold out to the defendant that it would pay checks to the extent of his balance in his checking account, the agreement, being without consideration and not in writing, it could be withdrawn at any time, and it was withdrawn, upon the conceded facts.

As to the first alleged cause of action set up as a counterclaim, it appears that this refers to the circumstances under which the collateral note, dated October 2, 1937, and payable three months after date, was issued. It may be assumed that this collateral note was a renewal of a former note of a similar type.

In the third paragraph of the answer, after reciting the course of dealing in reference to borrowing money for the purpose of purchasing securities, commencing as far back as the year 1926, the defendant alleges generally that the representatives of the bank stated to him from time to time that they would not call for the payment of the loan so long as the interest was paid; and, in the fourth paragraph, that on many occasions during a decline in stock market values he was told by the plaintiff that there should be no sale of the securities and that there would be no calling of the loan so long as the interest was paid. He comes down to the period of March, 1937, and in the fifth paragraph of his answer alleges that at that time there was a rise in the stock market, and that he " consulted with the president of the plaintiff bank, Daniel B. Schuyler, relative to the sale of said securities and the payment of the indebtedness, and that Mr. Schuyler advised against the sale and reiterated that so long as the interest was paid upon the note as heretofore the bank would not call the loan, and that it would hold the securities until there was such a rise in price, when it would sell them and thereby pay the indebtedness to the bank

and leave a profit to the defendant; that, had the securities been sold pursuant to the order of the defendant, in March, 1937, it would have cleared the indebtedness of the defendant and would have left a profit for himself; *that the defendant consented to the postponement of the securities because of plaintiff's promise through its officers and agents not to call the loan;* that the defendant, on each occasion that the bank was consulted relative to the sale of the same, and against which the bank advised, was in a position to make good any deficiency that may have arisen from the sale of said securities; that the defendant relied on said promises, and, were it not for said promises, defendant would have sold said securities and paid off the indebtedness to the bank and left a small profit for himself; that in case of a deficiency defendant was in a position, on each time that he consulted the bank prior to and including March, 1937, ' to pay any deficiency if there was.' "

In the sixth paragraph of his answer the defendant alleges that by reason of the negligence of the plaintiff bank, as aforesaid, and by reason of the bank's failure to sell, the plaintiff has occasioned and the defendant has sustained damages.

Neither in the reply of the plaintiff to the defendant's answer nor in the affidavits submitted by the plaintiff upon this motion is there any denial of these allegations of the answer. The plaintiff relies upon the note itself, dated October 2, 1937. The note recites the deposit of securities listed therein as collateral security for the payment of this note, or any note given in extension or renewal thereof, as well as for the payment of any other obligation or liability of the maker of the note to the bank, due or to become due, whether now existing or hereafter arising. The note further provides that the maker agrees to deliver to the bank additional securities or to make payments on account to its satisfaction, should the market value of said securities as a whole suffer any decline; and gives a lien to the bank upon said securities, and " also upon any balance of the deposit account of the maker of the note." It further provides that, upon the non-performance of this promise, or upon the non-payment of any of the obligations or liabilities above mentioned, or upon the failure to furnish additional securities, or to make payments on account in case of decline, or in case of insolvency, bankruptcy or failure in business of the maker of the note, that the same shall forthwith become due and payable without demand, and authorizes the sale of the securities, and provides for the use to which the proceeds thereof are to be put.

Of course, this instrument, by its very terms, negatives the allegations of the bases of the counterclaim, which are not in writing, but are oral. There is no allegation that the defendant executed

the note on the basis that the allegations of the counterclaim were a condition precedent thereto. Even if there were such an allegation, it could scarcely be claimed as a condition precedent, the effect of which would be to destroy or render non-active the material provisions of the collateral note, and would make the instrument read, in effect, that, although these securities are deposited to the payment of the indebtedness, the bank would never attempt to realize thereon so long as the interest upon the note was paid. Such a provision, if written into the note, would destroy it as a collateral note.

As between the parties to the instrument, where there is no question as to the delivery of the note or the inception thereof as such, a claimed oral condition precedent which negatives the provisions of the written instrument itself may not be set up as a defense to a recovery upon the instrument. (10 R. C. L. p. 1016 [and this rule applies to promissory notes]; Id. p. 1021; *Jamestown Business College Assn.* v. *Allen*, 172 N. Y. 291.) It is my opinion that such an allegation as that contained in the answer is not within the meaning of a condition precedent, even had it been alleged as such.

The relation between the plaintiff and the defendant, under this instrument, was simply that of pledgee and pledgor. What took place between the plaintiff and the defendant, as set up in this counterclaim, was merely, at most, a consultation in which the defendant sought and received advice as to the best policy to be pursued. Apparently the president of the bank thought, in March, 1937, that it was inadvisable to sell securities at that time. It is unimportant here, but it is generally known that such was the judgment of the large majority of people interested in securities. It may be that there was a mistake in advice, but the defendant did not have to accept the advice; the securities were his; he could have directed the plaintiff to sell his securities then, and, provided the market prices were high enough so there could have been realized upon them sufficient money to satisfy the obligations of the defendant to the plaintiff for which the securities were held as collateral, and if the plaintiff had refused to obey such command and thereafter the securities had fallen in price and the defendant had suffered damage thereby, there might have been laid the foundation for an action in negligence.

This subject has been fully considered in the case of *First Trust & Deposit Co.* v. *Potter* (155 Misc. 106) and the authorities cited therein.

The defendant, having failed to allege facts formulating the basis of a cause of action in negligence, it follows that this counterclaim is of no avail, either as a defense or as a counterclaim.

For the foregoing reasons, the motion of the plaintiff to strike out the answer and for judgment as demanded in the complaint in each of these actions must be granted. There is no dispute as to the principal amount due upon the notes, and the matter of accrued interest is a matter of computation.

Orderéd accordingly.