## GEORGE A. FAUNCE v. WILLIAM SCHUELLER.[1]

March 12, 1943.

No. 33,253.

[1]Reported in 8 N. W. (2d) 523.

*Leonard Eriksson,* for appellant.
*Field & Field,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Plaintiff brings this action as administrator of the estate of N. M. Faunce, deceased, on a promissory note for $825 in favor of decedent executed and delivered to him by defendant. Defendant admitted liability on the note but claimed a setoff in the sum of $2,906, basing his claim on Faunce's alleged failure to prevent or redeem from the foreclosure of a first mortgage on premises formerly owned by defendant.

At the close of the testimony the trial court directed a verdict for plaintiff for the full amount of the note, plus interest and costs, and denied defendant the right of any setoff thereto. This

appeal is from the court's order denying defendant's motion for a new trial.

The facts surrounding the transaction are as follows: On February 7, 1930, defendant, as principal, and the decedent and one J. O. Carlson, as sureties, furnished a bond to the probate court of Pope county in the sum of $3,000 conditioned for the faithful performance by defendant of his duties as guardian in the estate of Clarence Larson, a minor. On November 20, 1931, defendant executed and delivered to the sureties on said bond a second mortgage on a dwelling house belonging to defendant situated in the city of Fergus Falls. After reciting that such second mortgage was subject to a first mortgage in the sum of $2,500 in favor of the Fergus Falls Building and Loan Association, the second mortgage further provided:

"Provided, Nevertheless, That if the said William M. Schueller, one of the parties of the first part, his heirs, executors or administrators shall well and truly pay or cause to be paid to Clarence Larson, a minor, of whose estate the said William M. Schueller is guardian, the money that may be due and owing to the said minor on his becoming of age, as said account may be determined by the Final Account approved by the Court, then this deed to be null and void. But if default shall be made in the payment and satisfaction of the final account in said estate of Clarence Larson, a minor, on the approval and determination of said final account by the Probate Court of the County wherein said guardianship may then be pending the said parties of the first part in such case do hereby authorize and fully empower the said parties of the second part, their heirs, executors, administrators or assigns to sell the said hereby granted premises and convey the same to the purchaser in fee simple, agreeably to the statute in such case made and provided, and of the moneys arising from such sale to retain the principal and interest which shall then be due to the said Clarence Larson, together with all the costs and charges and also the sum of Seventy-five Dollars ($75.00) attor-

ney's fees, and pay the balance, if any, to the said parties of the first part, their heirs, administrators, executors or assigns.

"And since it is understood and agreed that the mortgagees are the sureties on the bond of the said William M. Schueller and as such liable for the payment to the said Clarence Larson of the money due on the final account to be rendered by the said William Schueller, as guardian, the said William Schueller and Mary Schueller, husband and wife, do further covenant and agree to and with the said parties of the second part, their heirs, executors, administrators and assigns to pay said sum of money above specified at the time and in the manner above mentioned, together with all the costs and expenses, if there shall be any, * * *."

Subsequently defendant so handled the assets of his ward's estate that they were lost, and he was removed as guardian. As a further result thereof, on September 22, 1933, judgment in the sum of $2,419.86 was entered against him and N. M. Faunce and J. O. Carlson as sureties on his guardian's bond.

On April 1, 1933, shortly prior to the entry of said judgment, on account of defendant's default in the payments required by the first mortgage, the same was foreclosed and the property sold at the foreclosure sale to the first mortgagee for $2,593.87, the amount then due thereon. No redemption was made from the sale, and on April 1, 1934, the first mortgagee became the owner of the premises. After certain improvements were made thereon, the new owner subsequently sold the same for $2,800.

On April 22, 1933, shortly after foreclosure of the first mortgage and shortly prior to the entry of the judgment against him, defendant filed a petition in bankruptcy, listing the premises covered by the two mortgages as part of his assets. Subsequently and until the year of redemption had expired on such foreclosure sale, the trustee in bankruptcy collected all rentals derived from said premises. Defendant was discharged from bankruptcy on February 26, 1934, but was not relieved from liability on the judgment against him by reason of the nature thereof.

After all the foregoing events had transpired, in August 1934 Faunce compromised his liability on the judgment against him for the sum of $825, and paid that amount to the judgment creditor for a release of his obligation thereon. Faunce having paid out his money on defendant's primary obligation, defendant on August 27, 1934, executed and delivered to him the note here sued on (plaintiff's exhibit A) in the sum of $825, which contained the following provision:

"The consideration for this note is the payment by N. M. Faunce, of the sum of $825.00 for William Schueller, on account of a certain bond which said Schueller had given to the Probate Court of Pope County, Minnesota, as guardian for Clarence Larson, a minor, upon which said bond said N. M. Faunce was surety."

As indicated, the note was delivered long after defendant's discharge in bankruptcy and the expiration of the year of redemption on the first mortgage foreclosure sale. Decedent at no time had possession or control of the premises, and in fact the first mortgage had been foreclosed long before his liability on the bond had been ascertained by judgment. The note made no reference to the mortgage and did not state or imply that any duty rested on decedent to look to the premises for satisfaction of defendant's obligation, although defendant testified at the trial that he was unaware that the mortgage had been foreclosed at that time.

Defendant's principal contention on appeal (assignments of error 6 to 9) is that decedent's failure to advance sufficient sums of money to make up defendant's defaulted payments on the first mortgage and thereby prevent foreclosure, or to advance sufficient sums thereafter to redeem from the foreclosure sale thereof, constituted negligence on the part of decedent, resulting in loss of the security placed in his hands by defendant, and consequent damage to defendant in excess of his liability on the note sued on; and that hence it was error for the trial court to direct a verdict for plaintiff for the full amount of the note sued on without allowing any setoff thereto.

Defendant's contention in this respect is based on the theory that decedent occupied the position of a surety with convertible assets in his control, pledged by his principal as security for the surety's liability for the principal's debt; and that the surety's failure to preserve said assets by taking care of the delinquencies on the first mortgage or redeeming from the foreclosure thereof constituted negligence on his part resulting in loss of the equity in the premises mortgaged and consequent damage to defendant, which defendant was entitled to set off against his obligation on the note.

We do not agree that such was the position of decedent, for it is apparent that he at no time had control or possession of the property involved, nor in fact any right thereto until such time as he might have completed foreclosure of the second mortgage and until the year of redemption in connection therewith had expired, and then only if the year of redemption on the first mortgage foreclosure had not expired. However, assuming for the sake of argument that defendant's position in this respect is correct, his proof would still fall far short of establishing any negligence or breach of duty on the part of decedent causing the loss or depreciation of the pledged security here involved.

The burden, of course, was upon defendant to establish not only that he suffered a loss in the transaction but that such loss was the result of some breach of duty, negligence, or misconduct on the part of decedent with reference to the collateral. Amick v. Empire Trust Co. 317 Mo. 157, 296 S. W. 798, 53 A. L. R. 1064. As far as the second mortgage is concerned, a reference to its terms as above set forth indicates clearly that it contains no requirement which obligated or compelled decedent to pay either the interest or principal on the first mortgage in case of defendant's failure to pay the same. On the contrary, the only reasonable construction which can be placed on the mortgages herein would indicate that the obligation to make the payments on both of them rested solely upon defendant, and no one else.

Likewise, it is obvious that there was no statutory requirement imposed upon decedent to make the payments on the first mortgage, although under Minn. St. 1941, § 580.29 (Mason St. 1927, § 9632), it was optional with him to do so had he so desired.

Since there existed no contractual or statutory obligation upon decedent requiring him to make such payments, there remains only to determine whether decedent breached any of the common-law duties imposed upon a person in his situation. The doctrine is well established that the duty imposed on one holding and controlling collateral as security for a debt (if, as defendant contends, such be the case here) is to exercise ordinary care for its preservation. Cooper v. Simpson, 41 Minn. 46, 42 N. W. 601, 4 L. R. A. 194, 16 A. S. R. 667; Minneapolis & Northern Elev. Co. v. Betcher, 42 Minn. 210, 44 N. W. 5. This does not mean that a surety is compelled or obliged to sell such collateral and apply the proceeds on his debt to escape the charge of negligence. On the contrary, it has been held frequently that, in the absence of any stipulation requiring such sale, it is entirely optional with the surety with collateral to sell it, to hold it, or to abandon it altogether and look to other assets of his principal in payment of the debt secured. Cooper v. Simpson, *supra;* Spooner v. Travelers Ins. Co. 76 Minn. 311, 79 N. W. 305, 77 A. S. R. 651; Allen v. Hook, 198 Mich. 122, 164 N. W. 384, L. R. A. 1918A, 441; Restatement, Security, Tentative Draft No. 2, § 52. It has also been held that, in the absence of stipulation requiring sale, the surety cannot be held liable for depreciation in the value of the property occurring after maturity of the debt. 41 Am. Jur. p. 643, § 82, and cases cited.

Since, then, there was no obligation on decedent here to look to the security or to sell it in satisfaction of his debt, it must be even more certain that there existed no obligation upon him to advance substantial sums from his own pocket to preserve it, particularly where the payments thus required were the primary obligations of the party who now claims that it was negligence for decedent not to make them. This is particularly true in the instant case,

where a contrary or opposite holding in effect would have forced decedent into a speculative real estate transaction which might have resulted in increasing rather than diminishing the loss with which he was confronted. The authorities are uniform that the surety is not compelled to advance expenses or payments on prior liens in order to preserve his security. Restatement, Security, Tentative Draft No. 2, § 18; City Bank of York v. Rieker, 262 Pa. 28, 104 A. 804; Wells & Dewing v. Wells & Scribner, 53 Vt. 1.

Accordingly, we hold that at the close of the testimony the evidence utterly failed to disclose any negligence, misconduct, or breach of duty on the part of decedent resulting in loss to defendant, and further that if defendant sustained the loss of any equity in the premises it was due solely to his own default in connection with the various transactions here involved.

■ Defendant's remaining claims of error herein (assignments of error 1 to 5) are based upon the contention that the trial court erred in sustaining objections to certain questions submitted to defendant by his counsel. These questions, in brief, related to the second mortgage above referred to and sought to elicit from defendant (1) whether the date thereon, November 20, 1931, was the actual date of execution; (2) what defendant had done with the document in the five days elapsing between its date and its recording; (3) what consideration was secured by such mortgage; (4) what defendant's intentions were in executing and delivering the mortgage; and (5) whether he believed that in executing and delivering it he had secured the mortgagee therein against loss.

We find no error in the court's rulings on the above questions. It would appear that under the pleadings and issues in the case they were objectionable on several grounds. The answer of defendant alleges directly that the mortgage was executed and delivered on November 20, 1931, the date the mortgage bears, and defendant is obviously bound thereby. In addition, it may be said that this and the other questions referred to appear as attempts to modify or enlarge upon the terms of the second mortgage, which is clear, definite, and unambiguous on its face. We cannot see

why the delay of five days in recording the instrument could have any bearing or materiality on the issues presented for trial. As to the consideration for the instrument, the mortgagor's intention in delivering the same, and his belief as to what was accomplished thereby, the instrument speaks plainly for itself in respect to all such matters.

Affirmed.