Richard J. Cardamone, J.
This is a motion for summary judgment pursuant to CPLR 3212 in an action instituted by the plaintiff for a sum of money claimed to be due and owing on a promissory note executed by the defendant.
The defendant corporation executed its promissory note on February 21,1963, in which it promised to pay the plaintiff bank the sum of $475,000, one month after date. In connection with the loan by the plaintiff to the defendant, the defendant assigned certain collateral to the bank consisting of five life insurance *339 policies which insured the life of the president of the defendant corporation and 468 shares of common stock of the Watertown National Bank. As a result of the defendant’s default on the note, the plaintiff commenced an action against the defendant on April 29,1963. The defendant’s answer admits the execution of the note but denies nonpayment and demand as alleged in paragraph 5 of the complaint. The answer sets up as a defense that the collateral security given to the bank as security for the promissory note is worth more than the amount of any alleged indebtedness, and, that the plaintiff had refused to sell any of the collateral to satisfy the indebtedness owed by the defendant to the plaintiff. The answer alleges that had the plaintiff sold the collateral assets, the indebtedness would have been satisfied and unnecessary interest expense charged to the defendant would have been avoided. It further alleges that the plaintiff owed it a duty to sell the collateral. For its third defense, the defendant alleges that the plaintiff agreed to and did accept interest at the rate of 5%% and at no time did defendant agree to pay interest at the rate of 6% as is now demanded in the complaint.
The moving papers reveal that subsequent to the institution of the action, principal payments were made reducing the principal balance to the sum of $87,229. The computation of this is not in dispute. Interest at the rate of 5%% has been accrued to April 22, 1963, the date when the action was commenced by the plaintiff, and from April 22, 1963, to date, has been computed at the rate of 6% on the unpaid balance of $87,-229. The plaintiff has furnished the court with an affidavit of its vice-president to which is attached a schedule indicating the date and the amount of principal payments made and the accrual of interest. There are also attached collateral agreements which are pledges of the five life insurance policies and the stock in the Watertown National Bank. These collateral agreements provide in part that ‘ ‘ the undersigned hereby further agrees that upon default in any payment of principal or interest at the times or on the terms provided in any note or obligation, any and all indebtedness of the undersigned shall at the absolute option of said First Trust & Deposit Company, hereinafter referred to as the ‘ Trust Company ’, become immediately due and payable and in such event said Trust Company is hereby authorized to sell the whole or any part of the aforesaid collateral.” Also attached and labeled are Exhibits G-l, G-2, G3, G4, and G5, which are assignments of the five life insurance policies from the defendant corporation to the plaintiff bank. The note of March 21, 1963, provides that the makers “ waive *340 presentment, demand for payment, protest and notice of nonpayment ’ ’. The cash surrender value of the five life insurance policies and the market value of the Watertown National Bank stock on April 22, 1963 (date when the action was commenced) amounted to $61,595, substantially less than the amount of the principal indebtedness due from the defendant to the plaintiff. The cash surrender value and the value of the stock have appreciated from that date to April, 1965, so that the value is now approximately $91,776.40. The plaintiff admits that from time to time there were discussions with the defendant regarding the sale of the stock in the Watertown National Bank but that no formal demand was ever made.
The facts as set forth in the affidavit of the president of the defendant corporation do not controvert the facts as set forth in the moving papers of the plaintiff. In paragraph 8 of his affidavit, which contains the defendant’s only attempt to establish an issue of fact, Mr. Conde states that during the year 1964 the defendant made requests through its attorneys that the collateral be sold. He states: “ 8. That during the year 1964, as it became apparent and obvious that the plaintiff held collateral equal to the amount of its indebtedness, the defendant did request the plaintiff to sell the collateral consisting of Watertown National Bank stock as well as to convert life insurance policies to .satisfy the indebtedness
The Court of Appeals has stated that in the application of rule 113 of the Rules of Civil Practice, now CPLR 3212, 16 issue-finding, rather than issue-determination, is the key to the procedure ” (Sillman v. Twentieth Century-Fox Film Corp., 3 N Y 2d 395, 404 [1957]). The purpose of the procedure is to sift out the evidentiary facts and determine the existence of an issue from them. Since the granting of the motion is the “ procedural equivalent of a trial ” (Falk v. Goodman, 7 N Y 2d 87, 91 [1959]), the motion for summary judgment .should be denied whenever the issue “is fairly debatable ” (Stone v. Goodson, 8 N Y 2d 8, 12 [1960]).
The moving party has the burden to set forth evidentiary facts to establish his cause sufficiently to entitle him to judgment as a matter of law; anything less requires denial of the motion, even where the opposing papers are insufficient (O’Connor-Sullivan v. Otto, 283 App. Div. 269 [3d Dept., 1954]).
In order to defeat summary judgment, a defendant must “ assemble and reveal his proofs in order to show that the matters set up in his answer were real and were capable of being established upon trial” (Dodwell & Co. v. Silverman, 234 App. Div. 362, 363 [1st Dept., 1932]). Mere generalities *341 will not suffice. An evidentiary showing is indispensable. (Anderson v. City of New York, 258 App. Div. 588 [2d Dept., 1940]; Stagg Tool & Die Corp. v. Weisman, 12 A D 2d 99 [1st Dept., 1960.].)
Examining the defendant’s answer and affidavit in opposition to this motion in the light of this criteria, they are insufficient to defeat plaintiff’s motion for summary judgment. The defendant’s answer denies that demand for payment of the balance due had been made on it and that payment had been refused. Yet the note which it signed on March 21,1963 expressly waived demand for payment, protest and notice of nonpayment and, further, in paragraph 3 of his answering affidavit, Mr. Conde admits that in March of 1963 the plaintiff “ did declare the entire amount of the note due and owing and advised that payment must be made in full forthwith and refused to renew the note or any part of the said loan ’ ’. The rest of the allegations contained in the complaint are admitted.
For his second defense the defendant states that the collateral assets should have been sold and that they are sufficient to liquidate the amount of principal owed by the defendant to the plaintiff bank. Nothing in the answering affidavit substantiates that defense. An examination of the plaintiff’s moving papers reveals that at no time during the year 1964 was the value of the collateral assets (even though the same were appreciating in value) equal to the principal amount of indebtedness due (even though that was being reduced). This fact is not controverted in the answering affidavit of the defendant. Further, the collateral agreements specifically provide that the bank was authorized to sell the collateral security but under no obligation to do so. It has long been well settled that the bank cannot be charged with liability for failing to sell or be compelled to sell collateral pledged to it on account of a loan. (Howell v. Dimock, 15 App. Div. 102 [2d Dept., 1897]; First Trust & Deposit Co. v. Potter, 155 Misc. 106, 110-111 [Sup. Ct., Onondaga County, 1935]; People’s Nat. Bank of Pulaski v. Hewitt, 226 App. Div. 412 [3d Dept., 1929], mod. 253 N. Y. 523 [1930].) As was stated in Conlew Inc. v. Newman (240 App. Div. 511, 512 [1st Dept., 1934]): “ The assignor, the pledgee of the notes, was under no duty to sell the collateral security even though it was instructed to do so by the defendant ’ ’. (Restatement, Security, § 52 [1941].) Thus, even accepting the allegations of defendant’s affidavit that they had requested the bank to sell the collateral, there was no obligation on the bank to do so. The issue is, therefore, not a factual issue that will serve, to defeat a motion for summary judgment.
*342 Unquestionably, the bank, as pledgee, occupies a position of trustee insofar as its dealings with the trust property are concerned (Toplitz v. Bauer, 161 N. Y. 325 [1900]), but, here, there is no showing that anything that the bank did or failed to do impaired the value of the collateral security which was in its possession. Indeed, the contrary is revealed. The cash surrender value of the life insurance policies has appreciated and the value of the stock in the Watertown National Bank has also had a substantial increase in value during the time it has been held by the bank up to date. Thus, there are no equitable considerations to be considered.
Finally, the defendant raises as a separate defense the question of interest, claiming that it never agreed to pay 6% interest but only contracted to pay 5%%. The moving papers mathematically reveal that 5%% interest was charged by the plaintiff to the defendant up until the time when the note became in default at which time the bank charged the legal rate of interest from the date of the breach. This was appropriate and proper. (Pryor v. City of Buffalo, 197 N. Y. 123, 142 [1909]; Syracuse Trust Co. v. First Trust & Deposit Co., 239 App. Div. 586 [4th Dept., 1933]; General Obligations Law, § 5-501.)
There being raised no triable issue of fact, summary judgment is granted in the sum of $87,229, with interest from April 22, 1963 at the rate of 6%.