OPINION OF THE COURT
David Stadtmauer, J.
In this action, the plaintiff seeks to recover an amount in excess of $250,000 from the defendant bank. According to the plaintiff a faithless employee took its corporate seal, prepared an unauthorized certificate of corporate resolution and opened an unauthorized bank account with defendant Citibank in the name of “Colonna and Company, Inc.” This employee allegedly appropriated checks payable to and owned by Colonna, and deposited these instru *79 ments into the false account under forged indorsements. The checks were paid by the various drawee (payor) banks, the proceeds were collected by Citibank and withdrawals were made by the employee from the account. When the plaintiff discovered the loss and demanded restitution from the defendant, payment was refused.
The plaintiff moves for summary judgment on its first three causes of action. Cause of action number one is based upon the “negligence of the defendant” in accepting and collecting the Colonna checks and in opening and maintaining the unauthorized corporate account. Cause of action number two alleges that these Colonna checks were converted. Cause of action number three, for “money had and received”, relates to the proceeds collected by Citibank and credited to the unauthorized account.
A party seeking summary judgment has the burden of producing evidence as upon a trial (Oxford Payer Co. v S. M. Liquidation Co., 45 Misc 2d 612). The opposing party has the same obligation (Five Boro Elect. Contr. Assn. v City of New York, 37 AD2d 807, affd 33 NY2d 676). Based upon the papers before this court, the plaintiff has submitted sufficient proof to establish prima facie that Citibank is liable.
In considering Colonna’s first cause of action, there appears to be a question of fact as to whether Citibank acted properly and in accordance with reasonable commercial standards. Therefore, summary judgment on this issue is not appropriate.
Whether or not the bank acted reasonably, however, it would still be liable if an instrument were paid on a forged indorsement (Uniform Commercial Code, § 3-419, subd [1], par [c]) or if it wrongfully retained proceeds that belonged to the true owner. The defendant does not dispute that the checks payable to Colonna were “instruments”, that they were deposited in Citibank, and paid by the various payor banks (drawees) and that Citibank collected the proceeds (see Uniform Commercial Code, § 4-105). Nor has the defendant presented any facts or affirmative proof (such as an affidavit by its own corporate depositor or by *80 “Peter Miller”, who opened the account) to substantiate that the indorsements and the corporate resolution were genuine, or that its own customer was a legitimate business entity, or that Miller was indeed the person who he represented himself to be. Copies of the corporate resolution and signature cards submitted to the bank, standing alone, do not speak for themselves. Nor are mere denials (concerning the ownership of the checks or the authenticity of the signatures) sufficient to raise triable issues regarding liability.
A motion for summary judgment may not be defeated by mere speculation, conjecture or surmise. An opposing party must assemble, lay bare and reveal his proof (First Trust & Deposit Co. v Conde Hardware Co., 47 Misc 2d 338). If the defendant seeks to preclude the plaintiff from asserting “lack of authority”, based upon the plaintiff’s alleged contributory negligence (Uniform Commercial Code, § 3-406), then the defendant has a dual burden. It must come forward with specific facts showing (a) how and why the plaintiff was negligent and (b) that such negligence substantially contributed to the making of an unauthorized signature. Mere conclusory statements that the plaintiff should have discovered the thefts and forgeries sooner, or that a substantial amount of money could not have been diverted over a 15-month period unless the plaintiff itself were negligent, do not satisfy this obligation.
To what extent is the bank liable? Prior to the enactment of subdivision (3) of section 3-419 of the Uniform Commercial Code (L 1962, ch 553, eff Sept. 27, 1964), a bank which obtained possession of a check upon an unauthorized or forged indorsement of the payee’s signature, and collected the amount of the check from the drawee, was liable to the payee or other owner for the proceeds— notwithstanding that funds may have been paid out to the person from whom the check was obtained (see Henderson v Lincoln Rochester Trust Co., 303 NY 27, 33; 5A NY Jur Banks and Trust Companies, § 396, p 148). The theory was that the bank acquired no title to the check because of the forgery and that, upon collection of the proceeds, the bank became a debtor of the true owner. According *81 to subdivision (3) of section 3-419 of the Uniform Commercial Code, however, it would appear at first blush that if a depositary or collecting bank acted in good faith and in accordance with reasonable commercial standards, its liability to the true owner is limited to “the amount of any proceeds remaining in [its] hands.”
Several courts have previously dealt with the meaning and application of subdivision (3) of section 3-419 of the Uniform Commercial Code in cases similar to the one at bar. Despite the apparent language of the statute, these courts have held that (when payment is made upon an unauthorized or forged indorsement) the bank retains all proceeds for the true owner — irrespective of the fact that it may have already paid the money to the embezzler. (See Sonnenberg v Manufacturers Hanover Trust Co., 87 Misc 2d 202; Cooper v Union Bank, 9 Cal 3rd 371; Ervin v Dauphin Deposit Trust Co., 38 D & C2d 473.) It would thus appear that there has been no real change from the rule in effect prior to the code.
In Ervin v Dauphin Deposit Trust Co. (supra), subdivision (3) of section 3-419 of the Uniform Commercial Code was not considered a defense on the theory that any money paid out to the forger came from the bank’s general funds while the proceeds of the checks were retained by the bank in trust for the true owner. The court also held that subdivision (3) of section 3-419 of the Uniform Commercial Code was not intended to include depositary banks unless they acted as “representatives” or agents as defined in subdivision (35) of section 1-201 of the Uniform Commercial Code. The reasoning in the Ervin case was largely adopted by the California Supreme Court in Cooper v Union Bank (supra), which, on similar facts, came to the same conclusion.
The theories upon which Ervin and Cooper were decided are thoroughly analyzed in a law review comment, Payee v. Depositary Bank: What is the UCC Defense to Handling Checks Bearing Forged Indorsements? (45 U Col L Rev 281). The comment concludes (p 313) with the compelling argument that the loss should be allocated to the party with the greatest power to prevent its recurrence and that *82 it is the depositary bank which has the best and last opportunity to discover the forgery. “It is certainly more able to verify the authenticity of the indorsement or the authority of the forger to collect on the check than the drawee bank, which under the Code is held absolutely liable for paying it.” In New York, the Court of Appeals alluded to the question here presented but declined to reach that .issue in the case before it. It did state, however, that “it is a general rule of statutory construction that a clear and specific legislative intent is required to override the common law” (Hechter v New York Life Ins. Co., 46 NY2d 34, 39). In referring to subdivision (3) of section 3-419 of the Uniform Commercial Code, the court concluded that “it is clear that the Legislature has not spoken in the unmuted strains necessary to displace the common law.” (Hechter v New York Life Ins. Co., supra, p 39.)
Also not to be overlooked is the apparent inconsistency in the code with respect to the liability of the depositary bank. For example, if Colonna had chosen to sue the drawer of a check, it could have recovered to the extent that the drawer’s underlying obligation was not discharged by the stolen instrument (Uniform Commercial Code, § 3-802, subd [1], par [b]) — without regard to any amounts paid out by Citibank to the embezzler. If the drawer’s account was wrongfully debited for the forged instrument, the drawer could then recover from the drawee bank for paying an item that was not “properly payable”. (Uniform Commercial Code, § 4-401, subd [1]). The drawee bank in turn could sue the bank from which it received the check for breaching its warranty of good title (Uniform Commercial Code, §§4-207, 3-417; also see Whaley, Forgery and the Holder in Due Course: The Commercial Paper Puzzle, 78 Com L J 277, 280; White and Summers, Uniform Commercial Code [1972], § 15-4, p 503). Citibank would carry the ultimate responsibility within the banking chain and it would be liable to the drawee for the full amount paid and collected. Yet, if subdivision (3) of section 3-419 of the Uniform Commercial Code were given a literal interpretation, the Citibank’s liability to the “true owner” of the instrument would seem to be limited only to the *83 amount then still remaining in its hands. There does not appear to be any rational basis for such a difference.
In view of all the foregoing circumstances, the plaintiff is entitled to summary judgment on its second and third causes of action — at least with respect to the issue of liability for the proceeds. This court also finds that the defendant did not pay out “proceeds” but retained them for the true owner, this plaintiff payee (Sonnenberg v Manufacturers Hanover Trust Co., 87 Misc 2d 202, 205, supra). However, since the plaintiff did not provide copies of all the checks alleged to have been stolen and forged, and since there is no conclusive evidence that all the deposits credited to the unauthorized bank account came exclusively from the proceeds of the Colonna checks, this court is unable to make any determination as to the actual amount of plaintiff’s damages.
Accordingly, the plaintiff’s motion for summary judgment against Citibank is granted with respect to the second and third causes of action on the issue of liability. The parties shall proceed to trial for the purpose of assessing damages.
Settle order, providing for a severance.