**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff,**

v.

**BLUE ROCK SHOPPING CENTER, INC., a Delaware corporation, Max Ambach and Rose Ambach, Defendants and Third Party Plaintiffs,**

v.

**The FARMERS BANK OF THE STATE OF DELAWARE, a corporation of the State of Delaware, Third Party Defendant.**

Civ. A. No. 80–398.

United States District Court,
D. Delaware.

June 28, 1983.

As Amended June 29, 1983.

Donald J. Wolfe, Jr., and Gregory A. Inskip of Potter, Anderson & Corroon, Wilmington, Del., Lawrence F. Bates, Federal Deposit Ins. Corp., Washington, D.C., for plaintiff.

John E. Babiarz, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants and third party plaintiffs.

Helen L. Winslow of Richards, Layton & Finger, Wilmington, Del., for third party defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This is a civil action brought by the Federal Deposit Insurance Corporation ("FDIC"), in its corporate capacity, to recover a debt evidenced by a Bond and Warrant delivered to Farmers Bank of the State of Delaware ("Farmers") by defendants Blue Rock Shopping Center Inc. ("Blue Rock") and Max and Rose Ambach.[1] The suit seeks to collect unpaid principal due on the Bond and Warrant amounting to $523,105.71 together with interest at the rate of 6.25 percent per annum from October 22, 1982, to the date of judgment. (Docket Item ["D.I."] 1 & 43.) Defendants deny liability and assert three affirmative defenses.[2] The defendants also have brought a third party action against Farmers alleging that if the defendants are liable to the FDIC, then Farmers is liable to defendants in the amount of $275,000 plus interest from August of 1975. FDIC has moved pursuant to Rules 12(f) and 56(a), Fed.R. Civ.P., to strike defendants' third affirmative defense and for entry of summary judgment in its favor on the complaint on the basis that no genuine issue of material fact exists and that FDIC is entitled to judgment as a matter of law. (D.I. 46.)

## FACTS

The undisputed facts viewed most favorably for the defendants may be summarized as follows: On September 29, 1966, defendants executed and delivered to Farmers a Bond and Warrant in which they promised "jointly and severally," to pay Farmers the sum of $800,000, plus interest at the rate of 6.25 percent per annum. (D.I. 21, Ex. A.) The Bond and Warrant was secured by a first mortgage on a parcel of real estate located at the Blue Rock Shopping Center in Wilmington, Delaware. On the same date, Blue Rock, by its President Max Ambach, executed and delivered to Farmers as additional collateral for the bond an assignment of Blue Rock's interest in a lease ("Assignment of Lease") of the parcel of land known as the Blue Rock Shopping Center ("Shopping Center"), on which a warehouse was erected which Blue Rock had previously leased to A.T.C. of Wilmington, Inc. ("ATC"). (D.I. 21, Ex. B.) The term of the ATC lease was for 15 years and ran from November 1, 1965 to October 31, 1980. ATC's lease payments assigned to Farmers coincided with defendants' installment obligations under the Bond and Warrant and the Mortgage. The payments to be made under the lease by ATC were guaranteed by Atlantic Thrift Center, Inc. (D.I. 21, Ex. C.) As a result of several corporate mergers, the lease ultimately was guaranteed by Arlen Realty and Development Corporation ("Arlen"). (D.I. 21, ¶ 6.)

---

1. Jurisdiction exists by virtue of 12 U.S.C. § 1819 and 28 U.S.C. § 1345.

2. The defendants abandoned their Second Affirmative Defense which alleged that the statute of limitations barred FDIC's claims. *See* D.I. 45, at 17.

On July 29, 1975, Blue Rock defaulted under the first mortgage and the terms and conditions of the Bond and Warrant. Blue Rock's default was caused by the concomitant default of ATC and Arlen. On August 12, 1975, defendants notified Farmers that ATC and Arlen were discontinuing its retail operation at the Shopping Center and would no longer be able to meet its obligations under the lease and guarantee. (D.I. 21, ¶ 6.) Defendants requested that Farmers accept a proposal submitted by Arlen to terminate the lease upon payment of $100,000 for the immediate surrender of the premises at the Shopping Center and an additional $24,000 if the premises were not retenanted within one year. (D.I. 21, Ex. D.) At the time of the settlement offer, Arlen, as guarantor of the lease, was obligated to make 63 additional monthly payments which amount exceeded $428,725. (D.I. 21, ¶ 7.)

Farmers rejected defendants' request that it accept Arlen's settlement offer. Instead, Farmers and Blue Rock executed a letter agreement on February 10, 1976, wherein Blue Rock assigned to Farmers its right, title and interest in the Arlen guaranty of the lease "in consideration of the Bank's forbearance in enforcing all its rights arising because of Blue Rock's default" of defendants' Bond and Mortgage. (D.I. 21, Ex. E.) After execution of the letter agreement, Farmers commenced suit in the Superior Court of the State of Delaware in and for New Castle County ("the Superior Court action") on March 10, 1976, against Arlen on the guaranty of the lease payments.

In accordance with the provisions of an Assistance Agreement dated May 20, 1976, between the FDIC and Farmers, Farmers on October 25, 1976, assigned to the FDIC all of its right, title and interest in: (1) the Bond and Mortgage (D.I. 21, Ex. G), (2) the Assignment of Lease which was executed by Blue Rock and ATC, and (3) the guaranty of the lease payments executed by Atlantic Thrift Center, Inc., and later assumed by Arlen. (D.I. 21, Ex. H.)

On January 8, 1980, the premises used for the Shopping Center were sold to the highest bidder for $325,000 at a public sheriff's sale on a writ of monition issued by the City of Wilmington to collect unpaid taxes that had accrued on the property. (D.I. 17, ¶ 5.) On April 21, 1980, the FDIC received $188,115.33 from the proceeds of the sheriff's sale which was applied to reduce defendants' obligations on the Bond and Warrant. (D.I. 21, ¶ 12.) On November 12, 1982, FDIC's claims in the Superior Court action against Arlen were settled by Arlen paying $148,467 to FDIC. As a result of the settlement, a deficiency balance of $523,105.71 remains on the bond as of October 22, 1982, together with interest at 6.25 percent per annum. (D.I. 43.)

FDIC has moved pursuant to Rules 12(f) and 56(a) to strike defendants' third affirmative defense and for entry of judgment in the amount of $523,105.71 plus interest at 6.25 percent per annum from October 22, 1982. The defendants resist FDIC's motions on the grounds that: (1) Farmers' refusal to accept Arlen's offer to settle for the default of the lease with Blue Rock amounted to a breach of fiduciary obligation to Blue Rock and the FDIC, as Farmers' assignee, accepted the Bond and Warrant subject to Farmers' breach; and (2) Max and Rose Ambach are accommodation makers on the bond and are entitled to invoke the defenses afforded by 6 *Del.C.* § 3–606.

LAW

A. *Farmers' Duty to Protect the Collateral*

The defendants in their First Affirmative Defense allege that the Assignment of Lease, executed on September 29, 1966, by Max Ambach acting as president of Blue Rock, and delivered to Farmers, as additional collateral for the Bond and Warrant, imposed a fiduciary duty upon Farmers to protect and preserve the security of the lease with ATC for the benefit of the defendants. The defendants rely upon the provisions of the Assignment of Lease

which provides Farmers with the right to institute action against the lessee (ATC) for unpaid rent:

2. Upon or at any time after default in the payment of any indebtedness secured hereby or in the performance of any obligation covenant or agreement contained herein, or in said note, the Assignee may, at its option, without notice, and without regard to the adequacy of the security for the indebtedness hereby secured, either in person or by agent, with or without bringing any action or proceedings, by a Receiver to be appointed by a Court, enter upon, take possession of, manage and operate said demised premises or any part thereof; make, cancel, enforce or modify leases; obtain and evict tenants, and fix or modify rents, and do any acts which the Assignee deems proper to protect the security hereof and, either with or without taking possession of said property, in its own name sue for or otherwise collect and receive such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon indebtedness secured hereby, and in such order as the Assignee may determine.

The defendants argue that Farmers breached its fiduciary duty owed to the defendants when Farmers refused to accept Arlen's settlement offer made in 1975 because the settlement offer was in the best interest of the defendants.

 The Court disagrees. Nothing in the Assignment of Lease imposes a fiduciary duty on Farmers to act in the interest of the defendants. Absent such an express agreement, the Court holds that Farmers did not owe a fiduciary duty to the defendants. It is well settled that one who holds and controls security for a debt does not act as a fiduciary for the debtor. Instead, in the absence of an express obligation to sell upon the request of the debtor, a lower standard is imposed, the creditor must exer-

cise ordinary care for the security's preservation. *See Faunce v. Schueller,* 214 Minn. 412, 8 N.W.2d 523, 526 (1943); *New Jersey Bank v. Toffler,* 130 N.J.Super. 161, 353 A.2d 116, 118 (1976); *Grace v. Sterling, Grace & Co.,* 30 App.Div.2d 61, 289 N.Y.S.2d 632, 637 (1st Dept.1968); *Beneficial Finance Co. v. Marshall,* 551 P.2d 315, 318 (Okl.App. 1976). *See generally* Comment 1 to 6 *Del.C.* § 9–207 (Uniform Commercial Code); Restatement of Security §§ 17 & 18 (1941).

 Farmers did not breach its duty to exercise reasonable care to protect the additional collateral when it refused to accept Arlen's original settlement offer in 1975. Arlen offered $124,000 to Farmers in exchange for the immediate surrender of the lease at a time when ATC and Arlen owed Farmers $428,725. Consequently, the value of Arlen's settlement offer was far less than the amount of the principal amount of the indebtedness to Farmers. (D.I. 45, at 5 & 7.) When the collateral is less than the amount of the total obligation, however, a creditor such as Farmers cannot be charged with liability if it refuses to sell the pledged collateral. *See Fidelity Bank & Trust Co. v. Production Metals Corp.,* 366 F.Supp. 613, 618 (E.D.Pa.1973). In *Fidelity,* the court noted that:

where the value of the collateral exceeds the amount of the debtor's entire obligation to the secured party, there is no justification for a rule authorizing the pledgee to disregard the pledgee's interest in the collateral and deprive him of the right to control its disposition for the benefit of both parties. In such a situation, where a secured party, upon request of the pledgor, fails to take steps to preserve the value of the collateral, a question should properly be raised as to whether the pledgee has exercised reasonable care under the circumstances. On the other hand, where the value of the collateral is less than the amount of the total obligation of the debtor to the secured party, the case is different. In such a situation, the value of the collater-

al is critically related to the pledgee's security interest and, absent a tender of the deficiency by the pledgor, the pledgee's exclusive right to control the disposition of the collateral is, in itself, reasonable. At the very least, it may provide the only leverage available to encourage the debtor to repay the debt in full. Thus in the only case that can be found where such a situation was presented, the Court held *as a matter of law* that a bank, as pledgee, could not be said to have failed to have exercised reasonable care to preserve collateral in its custody where it, upon request of the pledgor, refused to liquidate negotiable securities the disposition of which would not satisfy the debt for which they had been pledged to secure. *Hutchison v. Southern California First National Bank,* 27 Cal.App.3d 572, 103 Cal.Rptr. 816 (1972).

*Id.* at 616. *See also First Trust & Deposit Co. v. W.W. Conde Hardware Co.,* 47 Misc.2d 338, 262 N.Y.S.2d 565, 569 (1965); 72 C.J.S. (Pledges) § 34 (1951); Restatement of Law (Security) § 52 Illustrations 2 & 3 (1941). Thus the Court holds, as a matter of law, that Farmers did not breach its duty to protect the security given by the defendants as additional collateral for the Bond and Warrant.

### B. *FDIC's Settlement of the Superior Court Action*

The defendants alleged in their Third Affirmative Defense that FDIC's delay of the prosecution, settlement and resulting dismissal of the claim against Arlen in the Superior Court action constitutes an impairment and release of the collateral underlying the Bond and Warrant. They argue that Section 3–606(1)(b) of the Uniform Commercial Code ("UCC") as enacted in Delaware, 6 *Del.C.* § 3–606(1)(b), serves to discharge the defendants from any liability to FDIC on the Bond and Warrant. Section 3–606(1)(b) provides that "[t]he holder discharges any party to the instrument to the extent that without such par-

ty's consent the holder unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." Although the literal language of Section 3–606 is that the unjustifiable impairment of collateral serves to discharge any party to the instrument from liability, the majority of courts has held that Section 3–606 does not operate to discharge a co-maker of a note, as opposed to an accommodation maker. *See United States v. Unum Inc.,* 658 F.2d 300, 304 (5th Cir.1981), *reh. denied,* 664 F.2d 289 (5th Cir.1981). *Accord Hooper v. Ryan,* 581 S.W.2d 237, 238 (Tex.Civ.App. 1979); *Smiley v. Wheeler,* 602 P.2d 209 (Okl.Supr.1979). *See also Wohlhuter v. St. Charles Lumber & Fuel Co.,* 62 Ill.2d 16, 338 N.E.2d 179, 182 (Ill.1975); *Common Wealth Insurance Systems, Inc. v. Kersten,* 40 Cal. App.3d 1014, 115 Cal.Rptr. 653 (1974); *Peoples Bank of Point Pleasant v. Pied Piper Retreat, Inc.,* 209 S.E.2d 573, 578 (W.Va. 1974); *Commerce Union Bank v. May,* 503 S.W.2d 112, 116–17 (Tenn.1973); *Oregon Bank v. Baardson,* 256 Or. 454, 473 P.2d 1015, 1017 (1970); *Farmers State Bank of Oakley v. Cooper,* 227 Kan. 547, 608 P.2d 929, 933–34 (Kan.1980); *but see Southwest Florida Production Credit Association v. Schirow,* 388 So.2d 338–39 (Fla.App.1980); *Beneficial Co. of New York, Inc. v. Husner,* 82 Misc.2d 550, 369 N.Y.S.2d 975, 977–78 (N.Y.Supr.1975); *Rushton v. U.M. & M. Credit Corp.,* 245 Ark. 703, 434 S.W.2d 81, 83 (Ark.1968). This conclusion is supported by the Delaware Study Comment 1 to Section 3–606 which provides that a "latent surety cannot take advantage of § 3–606 since the holder must have knowledge of the party's capacity and he does not discharge when he is ignorant of the relation." The Delaware Study Comment 1 also provides that Section 3–606(1)(b) "states a suretyship defense which is generally recognized as being available to indorsers and accommodation parties." Notably, however, the Comment does not provide that co-makers of a note can invoke the unjustifiable impairment or release of collateral

**958**

defense provided in Section 3–606(1)(b). Although the Delaware Supreme Court has not determined whether a co-maker is discharged when there has been an unjustifiable impairment or release of collateral, this Court is of the opinion, based on Comment 1, that the Delaware Supreme Court would adopt the interpretation of the majority of courts that has addressed the issue and hold that Section 3–606(1)(b) does not discharge or release a co-maker of bond or note.[3]

Max and Rose Ambach contend that they are not co-makers of the Bond and Warrant, but are accommodation makers. They rely upon Section 3–415(1) of the UCC as enacted in 6 *Del.C.* § 3–415(1) which defines an accommodation maker as "one who signs [an] instrument in any capacity for the purposes of lending his name to another party to it." They argue that whether a party is an accommodation maker is a factual determination and therefore precludes summary judgment.

■ The most significant element in determining whether a party is an accommodation maker is the intention of the parties to the commercial transaction. *See Wilmington Trust Co. v. Gesullo,* 29 U.C.C. R.S. 144 (Del.Super.1980). "The most direct evidence of intention in this regard may be found where words of guarantee are expressly added to the signature of one claiming accommodation status on the face of the commercial instrument." *Id.* at 147. In this case, the Bond and Warrant does not denominate the Ambachs as accommodation makers. On the contrary, it expressly provides that the Ambachs and Blue Rock are "jointly and severally" liable. Where there is no direct evidence on the face of the instrument that the parties have signed as an accommodation maker, parol evidence may be introduced to prove such a status, but only if the rights of a holder in due course have not intervened. *See Gesullo, supra,* at 147–48.

■ A holder in due course is defined in Section 3–302 of the UCC as one who acquires an instrument "(a) for value; (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." 6 *Del.C.* § 3–302(1). It is undisputed that the FDIC was aware that Blue Rock's obligation under the Bond and Warrant was overdue and had been dishonored when the FDIC took assignment of the obligation from Farmers. Therefore, the FDIC is not a holder in due course under the provisions of the UCC.

■ The FDIC, however, is protected by the provisions of 12 U.S.C. § 1823(e) which provides that:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation [FDIC] in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been continuously, from the time of its execution, an official record of the bank.

Section 1823(e) nullifies any agreement tending to diminish the FDIC's interest that was not executed in writing contemporaneously with the note. The purpose of Section 1823(e) is to bestow upon the FDIC "the protections afforded a holder in due course and shield the [FDIC] against many defenses that would otherwise be available." *Federal Deposit Insurance Corp. v. Rockelman,* 460 F.Supp. 999, 1003 (E.D.Wis.

---

**3.** Both FDIC and the defendants assumed that the Uniform Commercial Code as enacted in Delaware applies to determine the rights of a

co-maker of a bond. (D.I. 48, at 8; D.I. 51, at 5.)

1978). *Accord Federal Deposit Insurance Corp. v. Rosenthal,* 477 F.Supp. 1223, 1226 (E.D.Wis.1979), *aff'd without op.,* 631 F.2d 733 (7th Cir.1980); *Federal Deposit Insurance Corp. v. Leach,* 525 F.Supp. 1379, 1384 (E.D.Mich.1981). Because the defendants do not rely upon any written agreements satisfying the requirements of § 1823(e) to show that the Ambachs acted as accommodation makers, the FDIC must be considered a holder in due course under § 1823(e) and any parol evidence tending to show the Ambachs as accommodation makers would be barred. Accordingly, the Court finds that the Ambachs are co-makers of the Bond and Warrant, and are not discharged by virtue of Section 3–606. The defendants' Third Affirmative Defense will thereby be dismissed as a matter of law.[4]

An order will be entered in accordance with this memorandum opinion.

---

**4.** The defendants submitted an affidavit of William Lynch, Esq., with two letters attached thereto (D.I. 55) from which the Ambachs argue they were accommodation makers. However, neither the affidavit nor the attached letters are sufficient to demonstrate that the conditions and requirements of § 1823(e) were met so as to defeat the right, title or interest of the

FDIC in the assignment by Farmers, dated October 25, 1976, of (1) the Bond and Warrant, (2) the assignment of the lease which was executed by Blue Rock and ATC, and (3) the guaranty of the lease payments executed by Atlantic Thrift Center, Inc., and later assumed by Arlen.